[No. 10936-1-II.   Division Two.   March 14, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. CHARLES DENNIS HAWKINS, *Appellant.*

---

*Kenneth G. Johnson* and *Brosey, Johnson & Williams,* for appellant (appointed counsel for appeal).

*James R. Miller, Prosecuting Attorney,* and *Nelson E. Hunt, Deputy,* for respondent.

REED, J.—Charles Hawkins appeals his first degree murder conviction and 50-year sentence. He challenges evidentiary rulings, a comment by the trial judge regarding the admissibility of summarized tape recordings, and the reasons for and length of the exceptional sentence. Finding no error, we affirm.

Oda Couch, an elderly man, was found dead in his trailer home in Randle, Washington, on the night of November 13, 1984. His house had been set on fire with a flammable liquid, and his body was badly burned. The cause of death was determined to be asphyxiation by inhalation of smoke and carbon monoxide; the discovery of soot in his larynx indicated that he was alive at the time of the fire. Mr. Couch had been severely beaten before he died in the fire. He suffered a depressed skull fracture that was consistent with a blow from a hammer or pipe. He also had seven broken backside ribs, a type of injury that requires considerably more force than the use of a fist and is commonly seen in automobile accidents. In addition, large amounts of Mr. Couch's currency and coins were missing from the trailer.

Charles Hawkins was first implicated in the crime when his former wife, Kimberly Young, approached the Lewis County Sheriff's Office in March 1985. She reported that Charles admitted that he and his brother David, Robin Combs, Dawn Edeburn (David Hawkins's girl friend), and

Rick Young (Kimberly Young's brother) were involved in Oda Couch's murder. He told Ms. Young that the group's plans to burglarize Couch's home went awry when Combs had a violent scuffle with the victim. Charles said he put the victim out of his misery by slitting his throat and created the appearance of an accident by wrapping Mr. Couch's legs in a blanket and setting fire to the trailer. The men took some buckets of money from Mr. Couch's home, and Charles received some $500. Hawkins's sister, Sharon Bowen, overheard part of this exchange.

Ms. Young met with Wayne Firnkoess, a special agent of the Bureau of Alcohol, Tobacco, and Firearms (ATF), and agreed to carry a surveillance device capable of recording a conversation. She met with Hawkins on April 25, 1985, for about 4½ hours; the entire encounter was recorded. Although much of their time together was spent running errands, Hawkins discussed the details of the crime and his involvement therein for about 20 minutes. The conversation essentially corroborated his earlier statement to Ms. Young, but Hawkins increased the amount of money he claimed to have received to about $2,000.

Law enforcement officers arrested Hawkins on October 20, 1986, and charged him with murder in the first degree. Hawkins then gave a detailed statement of what happened at the Couch residence but denied that either he or his brother was involved. He later changed his story and admitted that he helped plan the burglary and arson, but denied any involvement in the murder. David Hawkins was arrested the next day, and Combs was arrested the next week.

At pretrial hearings, Charles Hawkins's statements to the law enforcement officers were ruled admissible, and a 20–minute summary of the conversation recorded by Ms. Young was authenticated and ruled admissible over Hawkins's objection. At trial, Sharon Bowen testified that she overheard part of the initial conversation between Hawkins and Young. The defense on cross examination attempted to ask Bowen what Hawkins's motivation was

for making such statements to Young, but the State's hearsay objection was sustained. Before the surveillance tape was played for the jury, the Judge asked Mr. Firnkoess, the authenticating witness, whether he knew of cases where 100–hour tape recordings were admitted in full. Firnkoess answered in the negative.

Hawkins was convicted of first degree felony murder under RCW 9A.32.030(1)(c). His standard range is 271 to 361 months. The sentencing Judge entered reasons in support of an exceptional sentence and imposed a minimum term of 600 months (50 years) and a maximum of life imprisonment.

I

Hawkins first claims that the edited surveillance recording should not have been admitted because the prosecution failed to show that "changes, additions or deletions have not been made." *State v. Williams,* 49 Wn.2d 354, 360, 301 P.2d 769 (1956). We disagree. Hawkins's reliance on *Williams* clearly is misplaced. The record discloses that he was not in fact challenging the fidelity of the taped excerpts themselves. He merely wanted the entire 4½ hours played for the jury, despite the fact that only 20 minutes had any apparent relevancy. As the trial Judge attempted to point out, the defendant was making no claim that other portions of the 4½–hour unexpurgated tape were relevant.

■ The State had given Hawkins's attorney copies of both the original and edited versions of the tape. A week before trial, the Judge informed defense counsel that if he believed that any pertinent information had been omitted from the edited tape, he could propose his own version. None was ever submitted, nor was the unexpurgated tape offered. The trial court did not abuse its discretion by admitting the edited version of the tape recording. ER 102, 106.[1]

---

[1]ER 106 reads:

When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the party at that time to introduce any

## II

Sharon Bowen testified for the State that she overheard Hawkins tell Ms. Young that he was involved in the Couch murder. On cross examination, Ms. Bowen was asked if Hawkins later told her anything that rebutted what he had said earlier. The State's hearsay objection was sustained, and the defense made the following offer of proof:

He made the comment that he had lied to try and get Kimberly to come back to him.

Hawkins contends that the statement was admissible to prove his state of mind, either as nonhearsay or as admissible hearsay under the "state of mind" exception. We disagree.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). The above statement clearly was offered to prove the truth of the matter asserted, *i.e.*, that Hawkins had lied to Ms. Young about his involvement in the Couch murder. Further, the "state of mind" exception under ER 803(a)(3) does not make the statement admissible hearsay. The exception excludes from the rule a "statement of the declarant's then existing state of mind, . . . but not including a statement of memory or belief to prove the fact remembered or believed . . ." Hawkins's words were a statement of memory offered to prove that he had lied to

---

other part, or any other writing or recorded statement, which ought in fairness to be considered contemporaneously with it.

Even were we to find error, Hawkins has failed to show that he was prejudiced. The omitted portions of the tape include a drive in a car, the taking of a family portrait, a stop at a gas station, a trip to a park, and a 1½-hour trip to a store; the Oda Couch murder was not mentioned during any of these errands. Further, in view of the proper admission of the remaining evidence, including the confession he gave while in custody, any error in admitting the surveillance recording would have been harmless beyond a reasonable doubt. *State v. Wheeler*, 108 Wn.2d 230, 239–40, 737 P.2d 1005 (1987).

Ms. Young to try to get her back; they were not a declaration of his state of mind at the time he spoke. The defendant's remaining claims have no merit. The statement was properly excluded.

III

Hawkins asserts that the trial judge improperly commented on the evidence when the following dialogue took place in front of the jury:

THE COURT: You must be in cases where they have a hundred hour tapes?

MR. FIRNKOESS: Yes, sir; sometimes.

THE COURT: They don't go on with that.

MR. FIRNKOESS: No, sir; they don't.

He suggests that the comment implicitly conveyed to the jury the Judge's approval of the edited version of the recorded conversation. We cannot accept this position.

■ Article 4, section 16 of the Washington State Constitution prohibits judges from charging juries with respect to matters of fact, or commenting thereon, and mandates that they declare the law. The objective of this mandate is "'to prevent the jury from being influenced by knowledge conveyed to it by the court of what the court's opinion is on the testimony submitted.'" *State v. Eisner*, 95 Wn.2d 458, 461, 626 P.2d 10 (1981). To constitute a comment on the evidence, "'the jury must be able to infer from what the court said or did not say that he personally believed or disbelieved the testimony in question.'" *Egede–Nissen v. Crystal Mt., Inc.*, 93 Wn.2d 127, 139, 606 P.2d 1214 (1980) (quoting *State v. Browder*, 61 Wn.2d 300, 302, 378 P.2d 295, *cert. denied*, 375 U.S. 869 (1963)).

The trial Judge did not "comment on the evidence." His observations merely concerned the general practice when dealing with lengthy tape recordings. He did not convey to the jury any opinion from which it could infer that he believed or disbelieved any portions of the tape recording. Even if the comment were improper, the court's instruction

to disregard comments on the evidence would have cured any error.

## IV

Hawkins next challenges the reasons for his sentence outside the standard range. Whenever an exceptional sentence is imposed, the court must set forth the reasons for its decision in written findings of fact and conclusions of law. RCW 9.94A.120(3). The trial court made the following findings of fact in support of Hawkins's exceptional sentence:

### I.

The victim Oda Couch suffered as a result of the actions of the defendant and the other two participants a depressed skull fracture and 7 broken ribs. The broken ribs were accomplished by blows of a force comparable to that seen in automobile accidents. The victim was alive at the time of the fire which caused his death, although it is unknown whether he was conscious during that fire. In addition, the participants used a weapon to inflict the skull fracture. These injuries exceed that normally anticipated in a Burglary in the First Degree, as well as a murder, and show that the defendant showed deliberate cruelty to the victim during the commission of the crime.

### II.

The victim in this case was 75 years old at the time of the assault and fire which caused his death. The defendant knew that the victim was of advanced age and therefore particularly vulnerable.

### III.

This offense occurred in the victim's dwelling and therefore the defendants invaded the victim's zone of privacy to commit these crimes. The conduct here far exceeded that of a normal burglary. The fire which was set in the defendant's dwelling did more that damage the dwelling, it completely destroyed it. The victim's zone of privacy was not merely invaded, it was shattered.

When reviewing an exceptional sentence, we must first determine whether the trial court's reasons are supported by the record; as this is a factual inquiry, the reasons will be upheld unless they are found to be "clearly erroneous." RCW 9.94A.210(4)(a); *State v. McAlpin,* 108

Wn.2d 458, 462, 740 P.2d 824 (1987); *State v. Nordby,* 106 Wn.2d 514, 517-18, 723 P.2d 1117 (1986). Second, we must determine whether the trial court's reasons are sufficient as a matter of law—that is, "substantial and compelling"— and whether they are factors necessarily considered in computing the standard range. RCW 9.94A.120(2); RCW 9.94A.210(4)(a); *McAlpin,* 108 Wn.2d at 463; *Nordby,* 106 Wn.2d at 518. Several factors are listed in RCW 9.94A-.390(2) as aggravating circumstances. The factors are not exclusive, but are merely illustrative of what reasons are "substantial and compelling."

Hawkins first contends that the record does not support the first aggravating circumstance, deliberate cruelty to the victim. This factor is one of those identified in the statute as an aggravating circumstance. He claims that there was no solid evidence indicating his involvement as anything more than an accomplice to murder. However, "we will not split hairs" in an effort to determine the greater or lesser roles of these three participants. *State v. Altum,* 47 Wn. App. 495, 505, 735 P.2d 1356, *review denied,* 108 Wn.2d 1024 (1987). Although it is impossible to know the exact degree of each participant's involvement, the record clearly establishes that the three men were in the criminal enterprise together and equally share culpability for Oda Couch's death. The trial court explained in detail how the defendants' gratuitous violence manifested cruelty "'of a kind not usually associated with the commission of the offense in question.'" *State v. Payne,* 45 Wn. App. 528, 531, 726 P.2d 997 (1986) (quoting *State v. Schantzen,* 308 N.W.2d 484, 487 (Minn. 1981)); *see also State v. Holyoak,* 49 Wn. App. 691, 696, 745 P.2d 515 (1987), *review denied,* 110 Wn.2d 1007 (1988). This finding is supported by the record and by itself justifies an exceptional sentence.

The second circumstance relied on by the trial court is the victim's particular vulnerability due to his advanced age. This factor also is enumerated as an aggravating circumstance. Hawkins claims that this factor does not justify an exceptional sentence where the victim's age had no

bearing on the circumstances of the specific offense. He cites no authority in support of this proposition. Indeed, a similar claim was rejected in *State v. Clinton,* 48 Wn. App. 671, 741 P.2d 52 (1987), where a 67–year–old rape victim was found to be particularly vulnerable because of her age. The record in this case indicates that the defendant knew that Oda Couch was 75 and living alone when the offense was committed. Mr. Couch's advanced age made it more likely that he would be burglarized and severely injured. His vulnerability also justifies Hawkins's exceptional sentence.

In view of our decision regarding these two aggravating circumstances, we find that the trial court had substantial and compelling reasons for imposing an exceptional sentence.[2] Accordingly, we need not address Hawkins's claim regarding invasion of the victim's "zone of privacy." *Cf. State v. Fisher,* 108 Wn.2d 419, 429, 430 n.7, 739 P.2d 683 (1987).

V

Hawkins finally contends that the trial court improperly imposed a maximum sentence of life imprisonment. He claims that the Sentencing Reform Act of 1981 (SRA), RCW 9.94A, impliedly repealed RCW 9A.32.040, which states: "[A]ny person convicted of the crime of murder in the first degree shall be sentenced to life imprisonment." The test for determining whether a later general statute has repealed an earlier specific statute is as follows:

> (1) the later act covers the entire subject matter of the earlier legislation, is complete in itself, and is evidently intended to supersede prior legislation on the subject;

---

[2]Hawkins has not asserted that the 600–month sentence is clearly excessive. *See* RCW 9.94A.210(4)(b). Nevertheless, the trial court's decision regarding the duration of an exceptional sentence is reviewed for an abuse of discretion, *i.e.,* the sentence will be reversed only if no reasonable person would have imposed such a sentence. *State v. McAlpin,* 108 Wn.2d at 467; *State v. Armstrong,* 106 Wn.2d 547, 551–52, 723 P.2d 1111 (1986). Considering the extraordinary circumstances of this crime, we find that the trial court did not abuse its discretion in sentencing Hawkins to 600 months in prison.

or (2) the two acts are so clearly inconsistent with, and repugnant to, each other that they cannot be reconciled and both given effect by a fair and reasonable construction.

*Bellevue Sch. Dist. 405 v. Brazier Constr. Co.,* 103 Wn.2d 111, 122, 691 P.2d 178 (1984). Implied repeals of statutes are disfavored, and courts must interpret the statutes in a way that will give them effect. *Bellevue Sch. Dist. 405 v. Brazier Constr. Co., supra.*

■ In enacting the SRA, the Legislature established a new system of determinate sentencing, effective July 1, 1984, and provided for the gradual phaseout of the former indeterminate sentencing system. The statutes under the former system were not repealed; they merely were made inapplicable to persons who commit felonies on or after July 1, 1984. RCW 9.95.900; *Addleman v. Board of Prison Terms & Paroles,* 107 Wn.2d 503, 730 P.2d 1327 (1986); *In re Rolston,* 46 Wn. App. 622, 625, 732 P.2d 166 (1987).

Although the SRA is a sweeping reform of the prior sentencing structure, it is not complete in itself, and it can be reconciled with the statute in question. RCW 9A.32.040 requires a trial judge to impose a life sentence on any person convicted of murder in the first degree. This mandate is consistent with the prior indeterminate sentencing system of minimum and maximum sentence boundaries. *See* RCW 9.95. Although the particular statute in question was not one of those listed in RCW 9.95.900 as not applying to postreform felonies, we find that it was intended to apply only to persons who committed felony offenses prior to the effective date of the SRA.

Thus, as the Couch murder was committed after July 1, 1984, RCW 9A.32.040 does not apply to Hawkins. We therefore need not address Hawkins's claim that the life sentence imposed by the trial court was clearly excessive. In view of our decision regarding the propriety of the 50–year sentence, we need not remand this case for resentencing.

The maximum life sentence and the designation "minimum" are deleted; the exceptional sentence of 600 months shall be enforced.

Affirmed.

ALEXANDER, C.J., and WORSWICK, J., concur.

Review denied at 113 Wn.2d 1004 (1989).