[No. 23408–1–I. Division One. February 4, 1991.]

LEWIS W. KOKER, ET AL, *Respondents,* v. ARMSTRONG CORK, INC., ET AL, *Defendants,* CELOTEX CORPORATION, ET AL, *Appellants.*

468

*Mark S. Clark,* for appellant Celotex Corporation.

*William A. Olson* (*James D. Coleman* and *Walter M. Einhorn, Jr.,* of counsel), for appellant Raymark Industries.

*Susan R. Davis* and *Thomas K. Dalglish,* for respondents.

GROSSE, C.J.—The Celotex Corporation[1] and Raymark Industries, Inc. (collectively referred to as appellants) appeal a jury verdict and award to Lewis Koker and Roberta Koker (Koker) for damages arising from Mr.

---

[1] During the pendency of the appeal in this case, this court received a notice of pendency of bankruptcy and automatic stay as to The Celotex Corporation and Carey Canada, Inc. Therefore, pursuant to 11 U.S.C § 362(a), all proceedings in this court as to The Celotex Corporation and Carey Canada, Inc., are stayed. The other parties are not affected.

Koker's exposure to asbestos–containing products manufactured by appellants.

## FACTS

Lewis W. Koker worked as a pipefitter at the Todd and Lockheed Shipyards in Seattle from 1969 to 1971, and again from 1974 through 1986. While working at the shipyards he was exposed to asbestos–containing insulation products manufactured by the appellants. Koker claimed that as a result of this exposure to asbestos–containing materials he developed pleural thickening or pleural plaques in his lungs. He has asbestos fibers in his lungs and, according to testimony at trial, these fibers may cause him to develop asbestosis, mesothelioma, and/or lung cancer in the future. He testified he was often short of breath and troubled by a recurring cough.

Koker testified he knew he had been exposed to asbestos and the exposure was not good. However, he also testified that it was not until Lockheed sent most of its workers to Harborview Medical Center for tests in 1985 that he truly feared the results of his exposure. A physician first diagnosed Koker's pleural plaques in 1988. This case was filed on August 9, 1985.[2] Koker testified that as a result of his condition he has a reasonable fear of contracting cancer or other asbestos–related diseases. His wife testified regarding her perception of his fear and her opinion of the condition of his health.

At trial the appellants claimed the statute of limitations barred Koker's claims because he knew or should have known enough to file an action earlier than he did. The trial court held that the determination of the date of accrual of Koker's claim was a question for the jury. The jury determined, by special verdict, that Koker's claims, under theories of negligence and strict liability, were not

---

[2]According to Koker's brief, a question of asbestos–related disease was first raised to Koker by a physician at an Everett clinic in 1983. However, these records were not admitted into evidence at trial.

barred. The jury also determined that the appellants supplied products which were "not reasonably safe" and which were a proximate cause of the damage to Koker. Further, the jury found the appellants negligent and that this negligence was a proximate cause of the damage to Koker. The total amount of damages awarded by the jury was $107,500. This appeal followed.

APPLICABILITY OF THE 1981 TORT REFORM ACT

Central to the appellants' position in this appeal is the question of whether the provisions of the 1981 tort reform act (hereinafter Act) apply to this case. The Act, by its terms, applies "to all claims arising on or after July 26, 1981." *See* RCW 4.22.920. The appellants contend Koker's claim is a products liability claim arising after July 26, 1981, and thus governed by the Act. Koker argues his claim *arose* before the Act, but did not *accrue* until a later date, thus contending the pre–Act law should apply.

Of interest in the analysis is the legislative history regarding the use of the term "arising." As originally drafted, the 1981 tort reform act provided that the statute would apply to those claims "*accruing*" after July 26, 1981. However, as finally passed by the Legislature, the word "accruing" was changed to "arising." *See* Report of Standing Committee, Senate Journal, 47th Legislature (1981), at 613; *see* RCW 4.22.920.

In construing a statute, the court's paramount duty is to ascertain and give expression to the intent of the Legislature. *Service Employees Int'l Union, Local 6 v. Superintendent of Pub. Instruction,* 104 Wn.2d 344, 348, 705 P.2d 776 (1985); *Hama Hama Co. v. Shorelines Hearings Bd.,* 85 Wn.2d 441, 445, 536 P.2d 157 (1975). To determine the intent of the Legislature, the court first looks to the language of the statute. *Condit v. Lewis Refrigeration Co.,* 101 Wn.2d 106, 110, 676 P.2d 466 (1984). The Legislature is presumed to know the meaning of the words used in writing its enactments. *State v. Zornes,* 78 Wn.2d 9, 19, 475 P.2d 109 (1970). An elementary rule of statutory construction is

that where the Legislature uses certain statutory language in one instance, and different language in another, there is a difference in legislative intent. *See United Parcel Serv., Inc. v. Department of Rev.,* 102 Wn.2d 355, 362, 687 P.2d 186 (1984). This rule, although usually cited in the context of the use of different language within the same statute and therefore not fully on point in this case, is instructive by analogy. Although the terms "accruing" and "arising" were not used in different places within RCW 4.22.920, before final passage of the (amendatory) Act, the Legislature specifically changed the word from "accruing" to "arising" when enacting the applicability section. Laws of 1981, ch. 27, § 15. As shown below, the terms arising and accruing are not synonymous.

█ A court must give words in a statute their plain and ordinary meaning unless a contrary intent appears. *In re Estate of Little,* 106 Wn.2d 269, 283, 721 P.2d 950 (1986). "Arising" or "arising out of" is ordinarily understood to mean "originating from", "having its origin in", "growing out of", or "flowing from." *Avemco Ins. Co. v. Mock,* 44 Wn. App. 327, 329, 721 P.2d 34 (1986). As shown in *Martin v. Patent Scaffolding,* 37 Wn. App. 37, 42–43, 678 P.2d 362, *review denied,* 101 Wn.2d 1021 (1984), arising (or arose) and accruing are definitely not the same. In *Martin,* a products liability case, the case "arose" when the plaintiff fell from the scaffolding (pre–Act), but did not "accrue" for purposes of applying the statute of limitations until the plaintiff discovered or should have discovered all the elements of the cause of action (postenactment).

Further, there has been an interpretation of the same "arising" language which is contained in RCW 4.22.925[3] as well as RCW 4.22.920. In *Mina v. Boise Cascade Corp.,* 37 Wn. App. 445, 450–51, 681 P.2d 880 (1984) (automobile accident on I–82 outside Ellensburg), *aff'd,* 104 Wn.2d 696,

---

[3]This section was enacted to amend/clarify applicability questions surrounding the application of former RCW 4.22.010 (contributory negligence was not to bar recovery in a negligence action) which was repealed by the Act.

710 P.2d 184 (1985), the court determined that any confusion as to the statutory claim was eliminated by the amendment. The court held that because the cause of action (accident) in the *Mina* case "arose" prior to the effective date of the Act, the jury in that case was properly instructed on comparative negligence (pre–Act standard) rather than contributory negligence (postenactment standard). The case was not filed until after the effective date of the Act.

The *Mina* case follows those Washington cases holding that a claim arises when the injury producing event takes place, not when the claim is filed. *See, e.g., Zamora v. Mobil Oil Corp.,* 104 Wn.2d 199, 214–15, 704 P.2d 584 (1985); *Thompson v. Rockford Mach. Tool Co.,* 49 Wn. App. 482, 483, 744 P.2d 357 (1987), *review denied,* 110 Wn.2d 1007 (1988). *See also Lenhardt v. Ford Motor Co.,* 102 Wn.2d 208, 209, 683 P.2d 1097, 40 A.L.R.4th 609, (1984); *Lockwood v. AC&S, Inc.,* 44 Wn. App. 330, 346–47, 722 P.2d 826 (1986), *aff'd,* 109 Wn.2d 235, 744 P.2d 605 (1987). Here, the exposure to the asbestos was in the late 1960's, the 1970's, and 1980's.[4] Because the harm here results from exposure (continuous in nature), it appears that substantially all of the events which can be termed "injury producing" occurred prior to the adoption of the Act. The case was sent to the jury under instructions based on pre–Act law. Because the claim arose prior to the Act, we hold the trial court was correct in applying, and instructing the jury on, the case law and statutes in effect prior to the adoption of the Act. The contention of the appellants that the Act applies necessarily fails.

---

RCW 4.22.925 states:

"In accordance with section 15(1), chapter 27, Laws of 1981, the repeal of RCW 4.22.010 by section 17, chapter 27, Laws of 1981 applies only to claims arising on or after July 26, 1981. RCW 4.22.010 shall continue to apply to claims arising prior to July 26, 1981."

[4]All parties agree that the degree of exposure was less in the later years with the advent of preventative and precautionary measures.

DIRECTED VERDICT AND STATUTE OF LIMITATIONS

The appellants contend the trial court erred in refusing to grant a motion for a directed verdict on the fear of cancer claim. The appellants argue that Koker's claim was barred by the statute of limitations and that there was insufficient evidence to support Koker's claims.

■ As previously discussed, contrary to the appellants' contention, the Act does not apply in this case. The law in regard to statute of limitation defenses for claims arising prior to the Act is governed by the "discovery rule." A statute of limitation begins to run when a cause of action has *accrued. See Martin v. Patent Scaffolding*, 37 Wn. App. at 42–43 (interpreting former RCW 4.16.010). Here, the applicable statute is RCW 4.16.080(2). The discovery rule applies to product liability cases. The claim does not accrue until the claimant discovers, or reasonably should have discovered, all of the essential elements of the possible cause of action. *Ohler v. Tacoma Gen. Hosp.*, 92 Wn.2d 507, 598 P.2d 1358 (1979). As explained in *White v. Johns–Manville Corp.*, 103 Wn.2d 344, 348, 693 P.2d 687 (1985):

> In an ordinary personal injury action, the general rule is that a cause of action "accrues" at the time the act or omission occurs. In certain torts, however, injured parties do not, or cannot, know they have been injured; in these cases, a cause of action accrues at the time the plaintiff knew or should have known all of the essential elements of the cause of action. The rule of law postponing the accrual of the cause of action is known as the "discovery rule".

(Citations omitted.)

■ A cause of action in a negligence case accrues when a plaintiff discovers or reasonably should have discovered the essential elements of negligence, *i.e.*, duty, breach, causation and damages. *See Ohler*, 92 Wn.2d at 511. A products liability cause of action accrues when the plaintiff discovers or reasonably should have discovered that (1) he or she suffers physical harm from a product which has a defective condition making it unreasonably dangerous; (2) the defendant seller is engaged in the business of selling such a product; and (3) the product is expected to and does reach

plaintiff without substantial change in the condition in which it is sold. *Reichelt v. Johns–Manville Corp.,* 107 Wn.2d 761, 771, 733 P.2d 530 (1987).

Here, we cannot tell from the special verdict form the exact time the jury found the claim to have accrued. However, the jury found that Koker's claim was not time barred, therefore, it had not accrued more than 3 years before the filing of the action. At trial, there was much argument as to when Koker *reasonably* believed he had an actionable fear of cancer. The evidence at trial was that Koker did not have a diagnosis of pleural plaques until 1988. However, Lockheed sent him to Harborview for interviews and tests in 1985 to help determine if exposure to asbestos was a problem in the local shipyard. Koker also knew there was a question of asbestos–related illness after a visit to a physician in 1983.'Because of the renewed activity concerning asbestos–related illness, and the fact Lockheed sent him to Harborview for tests, Koker filed his claim in 1985.

The evidence at trial was that Koker had some fear and knew there was a risk of illness because some co–workers had become ill while he was working. However, Koker claimed he could have no *reasonable* "current" fear of the risk of illness until a later time when he exhibited symptoms or was diagnosed, this being the "injury caused by the defendant." The jury was presented with evidence of what Koker knew and when he knew it. It was a question of fact as to when Koker's current fear of cancer became reasonable and thus actionable. *See Sorenson v. Raymark Indus., Inc.,* 51 Wn. App. 954, 958, 756 P.2d 740 (1988). The trial court could not say as a matter of law that Koker was not entitled to the jury's verdict because there was a question of fact as to when the action accrued. The appellants admit this. Reply Brief of Celotex, at 3. After citing *Gevaart v. Metco Constr., Inc.,* 111 Wn.2d 499, 760 P.2d 348 (1988), for the proposition that "accrue" is most often used in the context of the statute of limitations, the appellants go on to state that the accrual of a cause of action

involves a factual determination as to whether Koker knew or should have known of the essential elements of the cause. Here, the jury determined, on the evidence presented to it, that the action was not time barred. "The point at which a plaintiff discovers or should have discovered that he or she is harmed and its cause is a question of fact for the jury to decide." *Stark v. Celotex Corp.*, 58 Wn. App. 940, 943, 795 P.2d 1165 (1990).

In considering a motion for a directed verdict the trial court views the evidence in the light most favorable to the nonmoving party and will grant the motion only if there is no competent evidence or reasonable inference therefrom which would sustain a jury verdict in favor of the nonmoving party. *Davis v. Globe Mach. Mfg. Co.*, 102 Wn.2d 68, 73, 684 P.2d 692 (1984). For a party opposing the motion there must be substantial evidence which would convince an unprejudiced thinking mind of the truth of the fact to which the evidence is directed. *Hojem v. Kelly*, 93 Wn.2d 143, 145, 606 P.2d 275 (1980); *accord, Campbell v. ITE Imperial Corp.*, 107 Wn.2d 807, 733 P.2d 969 (1987); *Peterson v. Littlejohn*, 56 Wn. App. 1, 11, 781 P.2d 1329 (1989). After viewing the evidence in the light most favorable to the nonmoving party, there is sufficient and competent evidence to support the decision of the jury. The trial court's denial of the motion was not error.

INSTRUCTIONAL ERROR ON STATUTE OF LIMITATIONS

The appellants contend the trial court erred in giving an instruction on the statute of limitations based on pre–Act law, such as *Ohler v. Tacoma Gen. Hosp.*, 92 Wn.2d 507, 598 P.2d 1358 (1979). As held above, the Act does not apply to this case under its facts. Therefore the appellants' contention that the jury instruction(s) given, which properly reflects the pre–1981 liability theories of strict liability and negligence, was erroneous is incorrect. The instruction given by the court was based on *Ohler* and its progeny. The proposed instruction argued by the appellants was based on the language of the Act, RCW 7.72.060(3). The instruction

given was based on the law in effect at the time the action arose, and thus the law to be applied in determining the outcome of the case. The trial court did not err in giving the instruction.

## OTHER INSTRUCTIONAL ERRORS

In their brief the appellants contend the trial court erred in instructing the jury that the proper standard of liability as to this case was the standard of strict liability. After this case was tried and after the opening brief was filed, the Washington Supreme Court decided the case of *Falk v. Keene Corp.*, 113 Wn.2d 645, 653, 782 P.2d 974 (1989) which is dispositive of the issue. Accordingly the appellants have withdrawn the issue from consideration.

█ Next, the appellants claim the trial court erred in refusing to give their proposed instruction to the jury that it could consider the asbestos industry's customs and compliance with legislative and administrative regulations. For authority, the appellants rely on the Act, specifically RCW 7.72.050(1). Our determination that pre–Act law applies is fatal to their contentions. Before the Act, parties could not introduce industry custom and technological feasibility evidence in strict liability design defect cases. *Lenhardt v. Ford Motor Co.*, 102 Wn.2d at 212. This was true under the pre–Act law unless the issue was first raised by the plaintiff. Here, Koker did not raise the issue of customs and standards within the industry as being probative of the reasonable expectations of an ordinary consumer. The court did not err in refusing the appellants' instruction.

The appellants contend the trial court erred in instructing the jury that the defendants had a duty to test their products and keep abreast of scientific knowledge surrounding those products. Instruction 22 given by the trial court stated:

This instruction applies to the plaintiffs' negligence claim:
A manufacturer of products is under a duty to use ordinary care to test, analyze and inspect the products it sells, and is charged with knowing what such tests should have revealed.

> The manufacturer has a duty to use ordinary care to keep abreast of scientific knowledge, discoveries, advances and research in the field, and is presumed to know what is imparted thereby.
>
> When a product manufacturer becomes aware or should have become aware of dangerous aspects of its product, it has a continuing duty to warn of such dangerous aspects even though the dangerous aspects are discovered after the product has left its hands. The duty to warn potential users exists even though such dangerous aspect was not known or foreseeable when the product was initially marketed.
>
> This duty to warn attaches, not when scientific certainty of harm is established, but whenever a reasonable person using the product would want to be informed of the risk of harm in order to decide whether to expose himself to it.

The appellants argue this instruction is an incorrect statement of the law as to their liability under both the Act and common law negligence. Further they contend the instruction sets forth factual conclusions in the guise of the legal standard to be applied by the jury, and therefore constitutes a comment on the evidence and invades the province of the jury. We disagree.

■ The appellants claim the instruction is inconsistent with duties under theories of common law negligence. They assert their only duty under the common law is that they must exercise ordinary or reasonable care, and there is no added duty to test or keep abreast of scientific discoveries. Whether the manufacturer has a duty to test or keep abreast of scientific discoveries has been discussed in several cases in Washington. First, at least two previous cases in Washington have had similar instructions, *see Lockwood v. AC&S, Inc., supra; Little v. PPG Indus., Inc.*, 92 Wn.2d 118, 594 P.2d 911 (1979), but neither case contained a challenge to the validity of the instruction. However, many cases have put forth the duty to inspect or test for defects as being on the manufacturer, rather than the retailer or consumer. *See Padron v. Goodyear Tire & Rubber Co.*, 34 Wn. App. 473, 477, 662 P.2d 67, *review denied*, 100 Wn.2d 1003 (1983); *Martin v. Schoonover*, 13 Wn. App. 48, 55, 533 P.2d 438 (1975); *Dobias v. Western Farmers Ass'n*, 6 Wn. App. 194, 200–01, 491 P.2d 1346 (1971). As stated in

*Dobias,* at 200, "Commercial expediency requires that the primary duty to test products lies with the manufacturer rather than the retailer, who is a mere conduit of the product."

Additionally, Koker cites cases from federal and other state jurisdictions to support the fact that a duty to inspect and test a product exists. For example, in *Dartez v. Fibreboard Corp.,* 765 F.2d 456, 461 (5th Cir. 1985), the obligation is explained by stating:

> *Borel* [*v. Fibreboard Paper Prods. Corp.,* 493 F.2d 1076 (5th Cir. 1973), *cert. denied,* 419 U.S. 869 (1974)] holds all manufacturers to the knowledge and skill of an expert. They are obliged to keep abreast of any scientific discoveries and are presumed to know the results of all such advances. Moreover, they each bear the duty to fully test their products to uncover all scientifically discoverable dangers before the products are sold. *Id.* at 1089–90. The actual knowledge of an individual manufacturer is not the issue. If the dangers of asbestos were known to Johns–Manville at the time of Dartez's exposure, then the same risks were scientifically discoverable by other asbestos corporations. Therefore, the testimony of the medical director of the industry's largest member is relevant to plaintiff's attempt to meet the evidentiary burden defined by *Borel.*

Koker also cites numerous cases from other jurisdictions which uphold the duty of a manufacturer to be familiar with current research.[5] Here, the instruction is couched in terms of common law negligence. The duty set out in the instruction is stated as a (common law) duty of ordinary care and is accepted in many jurisdictions. The appellants do not argue with the instruction other than to argue that it creates additional duties not found in the common law, and further that there is no authority establishing such a duty in the State of Washington. We do not agree.

---

[5]*See Braun v. Roux Distrib. Co.,* 312 S.W.2d 758 (Mo. 1958); *Hermes v. Pfizer, Inc.,* 848 F.2d 66 (5th Cir. 1988) (applying Mississippi law); *Moren v. Samuel M. Langston Co.,* 96 Ill. App. 2d 133, 237 N.E.2d 759 (1968); *Karjala v. Johns–Manville Prods. Corp.,* 523 F.2d 155 (8th Cir. 1975) (applying Minnesota law); *Bertrand v. Johns–Manville Sales Corp.,* 529 F. Supp. 539 (D. Minn. 1982); *Schenebeck v. Sterling Drug, Inc.,* 423 F.2d 919 (8th Cir. 1970) (applying Arkansas law); *Cover v. Cohen,* 61 N.Y.2d 261, 461 N.E.2d 864, 473 N.Y.S.2d 378 (1984).

■ The appellants further allege instruction 22 constitutes an impermissible comment by the trial judge on the evidence.

> To constitute a comment on the evidence, "'the jury must be able to infer from what the court said or did not say that he personally believed or disbelieved the testimony in question.'" *Egede–Nissen v. Crystal Mt., Inc.,* 93 Wn.2d 127, 139, 606 P.2d 1214 (1980) (quoting *State v. Browder,* 61 Wn.2d 300, 302, 378 P.2d 295, *cert. denied,* 375 U.S. 869 (1963)).

*State v. Hawkins,* 53 Wn. App. 598, 604, 769 P.2d 856, *review denied,* 113 Wn.2d 1004 (1989). The appellants contend the court has presumed a duty that does not exist. If there is no duty, then the presumption of the duty would indeed be a comment on the evidence. *See Martin v. Kidwiler,* 71 Wn.2d 47, 51, 426 P.2d 489 (1967) (presumed intoxication of one of the parties was a comment on the evidence). On the other hand, Koker argues the instruction made no comment on the evidence, but merely sets forth the duty manufacturers have. We agree. For cases tried under theories of common law negligence we believe the law supports the existence of a duty of a manufacturer to use ordinary care to test, analyze, and inspect its products. We also hold the law establishes a duty by a manufacturer to use ordinary care to keep abreast of scientific knowledge, advances, and research in its product field.

Next, the appellants claim the trial court erred in failing to correctly instruct the jury with regard to the appellants' duty to asbestos "users", like Koker. The appellants contend this duty was limited by the foreseeability of the product's danger. Instruction 26 stated:

> This instruction applies to both the plaintiffs' negligence claim and their product liability claim:
> The fact that a defendant neither foresaw nor should have foreseen the extent of the harm to Mr. Koker nor the manner in which the harm occurred does not prevent the defendant from being liable, if the defendant's conduct was a proximate cause in bringing about Mr. Koker's disease or other harm.

Appellants contend the instruction is erroneous because it instructs the jury that the foreseeability of Mr. Koker's injury is irrelevant to their liability.

While instruction 26 could do with some revision, we do not find that the trial court committed reversible error in giving it.

▇▇▇ The test of foreseeability is whether the result of the act of the defendant is within the "ambit of the hazards" covered by the duty imposed on the defendant,[6] *Rikstad v. Holmberg*, 76 Wn.2d 265, 269, 456 P.2d 355 (1969). *Rikstad* relied on *McLeod v. Grant Cy. Sch. Dist. 128*, 42 Wn.2d 316, 255 P.2d 360 (1953) for the approval of this theory. There, the Supreme Court said:

> Whether foreseeability is being considered from the standpoint of negligence or proximate cause, the pertinent inquiry is not whether the actual harm was of a particular kind which was expectable. Rather, the question is whether the actual harm fell within a general field of danger which should have been anticipated.

*McLeod*, at 321 (citing *Berglund v. Spokane Cy.*, 4 Wn.2d 309, 103 P.2d 355 (1940). Instruction 26 conformed to this rule.

▇▇▇ Closely related to their attack on instruction 26 is appellants' contention that the trial court erred by refusing to give their proposed instruction 14. The appellants' proposed instruction 14 stated:

> A manufacturer's duty to use ordinary care is bounded by the foreseeable range of danger. In order to recover on the theory of negligence, plaintiff must prove that the defendant should have anticipated an unreasonable risk of danger to plaintiff or to other workers of plaintiff's class.

This proposed instruction is an accurate reflection of the law as to the defendant's *duty* which is a question of law and not a question for the jury. The proposed instruction is

---

[6]This "test" is another way of stating the second sentence of the second paragraph of WPI 12.05, upon which instruction 26 is loosely based. The second sentence of the second paragraph of WPI 12.05 states:

> It is only necessary that the resultant [harm] [injury] [occurrence] *fall within the general field of danger which the defendant should reasonably have anticipated.*]

(Italics ours.)

In the "Note on Use" which follows the pattern instruction it is noted that this material should be used "only when there is an issue whether the resultant harm falls within the general field of danger which should have been foreseen."

a further attempt to interpret the second sentence of WPI 12.05 in another manner. Although this instruction might have helped to clarify and/or extend instruction 26 with regard to foreseeability, the common law duty of ordinary care included in the proposed instruction was already set forth in instruction 6.[7] As stated above, instruction 26 was not a model of clarity. However, from all the instructions given by the trial court, the appellants were able to argue their theory of the case. While the appellants' proposed instruction is a correct statement of the law, the failure of the trial court to allow it cannot be said to be an abuse of discretion. Each party is entitled to have his theory of the case set forth in the jury instructions; however, the trial court has considerable discretion in deciding how the instructions will be worded. *State v. Dana,* 73 Wn.2d 533, 439 P.2d 403 (1968). The test for the sufficiency of the instructions is whether the instructions, read as a whole, allow counsel to argue their theory of the case, are not misleading, and properly inform the trier of fact of the applicable law. *Gammon v. Clark Equip. Co.,* 104 Wn.2d 613, 617, 707 P.2d 685 (1985). Here, counsel was able to argue his theory. On this record, we cannot say that appellants' proposed instruction 14 was necessary as a matter of law. Therefore, the failure to give the instruction was not error.

The appellants claim the trial court erred in giving instruction 16 which directed the jury to award damages for an "increased risk of contracting cancer." The instruction was based on a theory found in *Herskovits v. Group Health Coop.,* 99 Wn.2d 609, 664 P.2d 474 (1983). Koker claims that even if the giving of instruction 16 was error it was cured by instruction 17 which limited the damages to those "recoverable" and not merely speculative. Instruction 17 followed the reasoning of *Sorenson v. Raymark Indus., Inc.,* 51 Wn. App. 954, 756 P.2d 740 (1988) which disapproved of a *Herskovits* theory of increased risk in asbestos

---

[7]Instruction 6 contained the definitions of negligence and ordinary care.

cases, but approved of a compensable fear of developing cancer due to asbestos exposure.

Instruction 16, the reduced chance of survival instruction, stated as follows:

> If you find that the negligence of any defendant has caused any plaintiff to have a reduced chance of survival in the future due to the asbestos–related lung disease, you should award damages caused directly by the increased likelihood, if any, of his premature death.

This instruction attempts to set out the law as stated in *Herskovits,* 99 Wn.2d at 614, which allows damages for a reduced chance of survival in a medical malpractice case.

 This instruction and theory (under *Herskovits*) was rejected and criticized by this court for asbestos cases in *Sorenson v. Raymark Indus., Inc., supra.* Although the discussion in *Sorenson* went to the admissibility of challenged evidence, the case held that a plaintiff in an asbestos action, such as the one here, may not recover damages for an increased risk of contracting cancer *unless he can demonstrate with reasonable probability that he will actually develop the disease. Sorenson,* 51 Wn. App. at 956–57. *See also Zueger v. Public Hosp. Dist. 2,* 57 Wn. App. 584, 789 P.2d 326 (1990) (evidence must show a substantial reduction in the chance of survival). The primary thrust of *Herskovits* is that a physician's misdiagnosis of cancer either deprives a decedent of a chance of surviving a potentially fatal condition or reduces that chance. *Daugert v. Pappas,* 104 Wn.2d 254, 261, 704 P.2d 600 (1985). As *Daugert* explains, this rationale permits a party to recover where the plaintiff has lost an opportunity *and has no other redress. Daugert,* 104 Wn.2d at 261; *see also Sorenson,* 51 Wn. App. at 957. Here, Koker has not lost an opportunity as he seeks damages for a future harm for which he may bring another action when actionable injury results. A "lost chance of survival" instruction does not apply in cases such as this. *See Sorenson,* 51 Wn. App. at 957.

Next we must determine whether the giving of instruction 17 cured the error. Instruction 17 as given by the court stated:

> A reasonable fear of contracting cancer from exposure to defendants' asbestos containing products is an existing injury that is compensable. Unless proven with reasonable medical probability that Mr. Koker would contract cancer from exposure to defendants' asbestos containing products, the increased likelihood of contracting such cancer is not a present injury and is not compensable.
>
> Any evidence you have heard as to the increased risk of contacting [*sic*] cancer from exposure to defendants' asbestos containing products may be considered by you solely for the purpose of determining the reasonableness of the present fear, if any, of cancer from exposure to defendants' asbestos containing products and it shall not be considered for the purpose of determining whether or not cancer will be contracted in the future.

The parties agree that this is a correct statement of the law under *Sorenson.* Koker contends that when read as a whole the jury instructions are not erroneous as instruction 17 necessarily qualifies instruction 16. We disagree.

The error in instruction 16 is not cured by instruction 17 because instruction 17 is the only proper instruction under the current case law regarding damages for fear of cancer. The giving of instruction 16 allowed the jury to award damages for a lost chance of survival of which there was no proof. Instruction 17 is unrelated.

As stated in *Hall v. Corporation of Catholic Archbishop,* 80 Wn.2d 797, 804, 498 P.2d 844 (1972):

> [W]e have held consistently that it is prejudicial error to give irreconcilable instructions upon a material issue in the case. Where instructions are inconsistent or contradictory on a given material point, their use is prejudicial, for the reason that it is impossible to know what effect they may have on the verdict.

(Citations omitted.) The trial court erred in giving instruction 16. Instruction 17 is not reconcilable with instruction 16. Therefore, this error makes it necessary to reverse and remand for a new trial.

Finally, the appellants contend the trial court erred by suggesting there would be an allocation of financial responsibility among not only the appellants, but other nondefendant asbestos manufacturers as well. The appellants allege instruction 18 impermissibly suggests and implies that nondefendant manufacturers would share liability or financial responsibility for any damages awarded against appellants. Instruction 18 stated as follows:

> You have heard testimony about manufacturers or sellers of asbestos–containing insulation products who are not defendants in this case. If you find for the plaintiffs, you are to award plaintiffs their full damages, and you are not to speculate as to the method or effect, if any, or allocation of responsibility among parties defendant and other manufacturers or sellers outside the context of this trial.

The appellants contend this instruction allowed the jury to speculate and increase its damage award based on the number of manufacturers. Koker argues the jury is presumed to follow the court's instruction absent a showing that it did otherwise. *See Bordynoski v. Bergner,* 97 Wn.2d 335, 342, 644 P.2d 1173 (1982); *In re Metropolitan Seattle,* 67 Wn.2d 923, 930–31, 410 P.2d 790 (1966). The appellants claim that external events connected with jury deliberations are at times indicated to show the jury did not follow the instructions. *See State v. Davenport,* 100 Wn.2d 757, 675 P.2d 1213 (1984) (Prosecutor in final argument stated defendant was an accomplice when defendant had not been charged as accomplice nor any accomplice instruction given by the court. Jury, during deliberations, sent note to judge asking for a definition of accomplice; verdict overturned.). Unlike *Davenport,* the appellants have failed to point out what external events affected the jury other than the appellants' own belief that the award was higher than it should have been, given the limited physical impairment of Koker. The appellants did not prove the existence of any external events affecting the verdict. *See* 14 L. Orland & K. Tegland, Wash. Prac., *Trial Practice* § 241, at 393 (4th ed.

1986). Further, the appellants failed to prove the instruction impermissibly suggested that an allocation would occur, particularly given that the instruction conclusively stated the contrary.

Due to the error in instruction 16, we must reverse and remand for a new trial.

SWANSON and WINSOR, JJ. Pro Tem., concur.

Reconsideration denied March 12, 1991.

Review denied at 117 Wn.2d 1006 (1991).