[No. 28853-9-I.   Division One.   November 25, 1991.]

E. ROSA YOUNG, *as Guardian ad Litem, Petitioner,* v. KEY PHARMACEUTICALS, INC., ET AL, *Respondents.*

---

428

*John P. Walsh, Joel D. Cunningham,* and *Williams, Kastner & Gibbs,* for petitioner.

*Kathy F. Cochran, John G. Fritts,* and *Wilson, Smith, Cochran & Dickerson; Jean-Pierre Garnier;* and *John G. Bergmann* and *Helsell, Fetterman, Martin, Todd & Hokanson,* for respondents.

PER CURIAM. — Petitioner E. Rosa Young, as guardian ad litem for her son Devan, seeks discretionary review of pretrial orders of the Superior Court denying a motion to use the testimony of Allyn Golub and Elliot Ellis from an earlier trial and a motion for issuance of letters rogatory to

facilitate the deposition of Golub in the state of Florida. Key Pharmaceuticals, Inc. (Key) has filed a response in opposition to the motion for discretionary review. A commissioner referred the motion to a panel of judges for consideration on the merits. We grant discretionary review solely with regard to the issue of whether the trial court erred in denying the motion to permit the use of Golub's testimony from an earlier trial, accelerate disposition of the matter pursuant to RAP 18.12,[1] and reverse the decision of the trial court.

In February 1979, Devan Young suffered serious brain damage allegedly as a result of taking the theophylline preparation Theo-Dur.[2] The drug theophylline is commonly used to treat asthma in children. Young thereafter commenced this product liability action against Key, the manufacturer of Theo-Dur, for failure to warn physicians and patients of the effects of high fevers and viral infec-

---

[1]RAP 18.12 provides:

"The appellate court may set any review proceeding for accelerated disposition on the judges' motion calendar. The appellate court clerk will notify the parties of the setting and any orders entered to promote the accelerated disposition under rules 1.2(c) and 18.8(a)."

[2]In *Young v. Key Pharmaceuticals, Inc.*, 112 Wn.2d 216, 219, 770 P.2d 182 (1989), the Supreme Court described the events leading up to the tragedy as follows:

"Dr. Ronald Case was one of the doctors who treated Devan at Children's Orthopedic Hospital [for acute asthma]. When he first saw Devan in September 1978, Devan was taking the theophylline preparation Elixophyllin, 20 cc every 5 to 6 hours. Clerk's Papers, at 56. Because this medication required Devan's mother to get up in the middle of the night to administer one of the doses, Dr. Case changed Devan's prescription to Theo-Dur. Theo-Dur is a timed-release theophylline preparation which requires fewer doses per day to achieve the proper blood level. Dr. Case prescribed 200 mg of Theo-Dur to be taken twice daily. Clerk's Papers, at 56-57. Sometime in the middle of January 1979, Devan's prescription was changed to 300 mg twice daily. Dr. Case saw Devan on January 26, 1979 and checked his theophylline level, which was 11.8 micrograms per milliliter — well within the therapeutic range. Clerk's Papers, at 58.

"On February 1, 1979, Devan began to have seizures. Brought to Children's Orthopedic Hospital for emergency treatment, his theophylline level was found to be 68 micrograms per milliliter. Clerk's Papers, at 58. As a result of this high level, Devan became disabled and will probably need custodial care for life as a result of permanent brain damage."

tions upon the body's ability to metabolize theophylline, an essential component of Theo-Dur. The complaint alleged that Devan's mother and physicians kept giving him Theo-Dur despite the fact he had a fever and viral infection, and that Devan was brain damaged by seizures caused by toxic levels of the drug. The case was filed in King County Superior Court in 1986 and went up to the Supreme Court on other issues in 1989. *Young v. Key Pharmaceuticals, Inc.*, 112 Wn.2d 216, 770 P.2d 182 (1989). The case was subsequently remanded for trial against Key only and was preassigned to Judge Schapira in September of 1990.

In January 1991, Key's parent company was added as a party defendant, resulting in a continuance of undetermined but short duration. In April, Key's parent company filed an affidavit of prejudice against Judge Schapira, who had presided over a trial in which Key had been sued by another child who had suffered brain damage as a result of taking Theo-Dur (hereinafter referred to as the Hyde trial). This resulted in reassignment to another judge and another delay. Discovery cutoff was moved from June 17 to July 8.

Golub and Ellis had both testified at length for Key at the Hyde trial. The case was tried in February and March of 1991 in King County. Golub was Key's in-house expert on research and marketing from 1977 when Theo-Dur first came out, and Ellis was a consultant/expert physician who advised Key on the uses and risk in using the drug. Both witnesses testified regarding what Key knew about the drug and the role Key played in issuing warnings and labels. Before a verdict was entered in the Hyde trial, the parties negotiated a settlement.

Both Young and Key had initially listed Golub as a lay witness in the instant case. However, in April of 1991, *after* his testimony in the Hyde trial and return to Florida, Young was advised that Key did not intend to call Golub as a witness in the pending trial. After attempting without success to contact Golub, Young asked defense counsel to assist

in contacting him regarding being a witness or being deposed. On May 9, 1991, Young was advised that Golub, a Florida resident, refused to be deposed or to testify in the case. Young then moved for permission to use the testimony of Golub and Ellis from the Hyde trial. The trial court denied the motion on June 27, 1991.

Young subsequently moved to issue letters rogatory to aid in deposing Golub or, in the alternative, for a continuance. Following a hearing on July 25, 1991, the motions were denied.

## DECISION

Young seeks discretionary review of the superior court orders denying (1) the motion to allow the use of the prior trial testimony of Golub and Ellis, and (2) the motion for issuance of letters rogatory. Under RAP 2.3(b), discretionary review is proper only:

(1) If the superior court has committed an obvious error which would render further proceedings useless; or

(2) If the superior court has committed probable error and the decision of the superior court substantially alters the status quo or substantially limits the freedom of a party to act; or

(3) If the superior court has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by an inferior court or administrative agency, as to call for review by the appellate court.

We conclude that Young has met the criteria of RAP 2.3(b)(3), but only with regard to whether the trial court properly refused to permit the use of Golub's testimony from the Hyde trial.

ER 804(b) provides:

The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) *Former Testimony*. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Key contends that Young's motion was premature under ER 804(b)(1) since the evidence rule clearly contemplates that the motion to admit the evidence will be made at the time of trial. However, such a rigid and technical construction of the evidentiary rule is unwarranted. A litigant should not be required to wait until trial to move to use the former trial testimony of a prospective witness and risk having the nonmoving party claim a violation of the discovery rules. The practice employed by Young in this case achieves the best balance between the criteria of ER 804(b)(1) and the requirements of the applicable discovery rules. The motion alerted Key to the prospect of having to meet and defend against the testimony of another witness.

Key next contends that Young has not established that Golub and Ellis were "unavailable" as required by ER 804(b)(1). However, Golub and Ellis both lived in Florida and were therefore beyond the reach of a subpoena. Although a witness may be compelled to attend a deposition by use of a subpoena, no statute or rule authorizes the service of a subpoena upon a witness who is not a party in a civil case and who resides outside the state. 5A K. Tegland, Wash. Prac., *Evidence* § 204, at 109 (3d ed. 1989). Nevertheless, a witness is not considered unavailable simply because he or she cannot be reached by subpoena. As stated in *Rice v. Janovich*, 109 Wn.2d 48, 57, 742 P.2d 1230 (1987),

> ER 804(a)(5) defines a witness as unavailable if the witness "[i]s absent from the hearing and the proponent of his statement has been unable to procure his attendance . . . by process or other reasonable means." If a witness is found unavailable under this test, the witness' former testimony may be admitted into evidence under ER 804(b)(1). As the rule indicates, an inability to reach the witness by subpoena power is not sufficient to establish unavailability; the party calling the witness must also establish an inability to reach the witness by "other reasonable means." The party offering the out-of-court statement of a witness beyond the legal reach of a subpoena should at least be required to represent to the court that it made an effort to secure the voluntary attendance of the witnesses at trial. 5A K. Tegland, Wash. Prac., *Evidence* § 393, at 271 (2d ed. 1982).

In this case Young's counsel attempted unsuccessfully to reach Golub and was subsequently informed by Key's counsel that Golub, a Florida resident, had refused to be deposed or to testify in the case. Young's attempt to reach Golub through issuance of letters rogatory was opposed by Key and refused by the trial court. Golub would thus qualify as an "unavailable" witness under ER 804(b)(1). *See Rice v. Janovich, supra.* The same cannot be said for Ellis. There is nothing in the record to indicate that Ellis is unwilling or unable to be deposed. Quite the contrary, Key *still* intends to call Ellis as a witness in the Young trial. The trial court's June 17 ruling permitted Young to impeach Ellis with the testimony he gave at the Hyde trial.

Finally, Key contends that Young has not established that the issues involved in this case and the Hyde trial are similar. Thus, Key appears to dispute whether it had similar motives and opportunities to develop the testimony of Golub in the Hyde trial.[3] However, there is a great deal of evidence in the record before this court suggesting that the material issues present in this case are the same as those in Hyde. A clinical toxicologist, who was familiar with the facts in both cases, stated in a declaration:

> [5]. The central issue in the *Hyde* case was whether Key Pharmaceuticals should have warned and instructed physicians concerning the dangers of Theo-Dur (theophylline) when children contract fevers or viral infections while on the drug. Plaintiffs claimed that theophylline poisoning occurred because the viral infection altered the liver so that the drug built up in the body. Key denied that the Hyde child suffered theophylline poisoning as a result of the effects of a viral infection, and claimed the boy was overdosed by his physicians.
>
> From my viewpoint, the issues in the *Young* case are virtually identical to those in Hyde. Key also contends in *Young* that it had no duty to warn about the viral infection/

---

[3]Key claims that much of what Golub testified about in the Hyde trial would be irrelevant in this proceeding. We express no opinion regarding the relevance of the former testimony. Any relevancy objections may be addressed when Young attempts to actually introduce the prior testimony into evidence. *See* 5B K. Tegland, Wash. Prac., *Evidence* § 396, at 255-56 (3d ed. 1989).

theophylline interaction, and that the cause of the brain damage was an overdose.

6. The only real difference in the two cases that I can see is that Michael Hyde suffered his brain damage from Theo-Dur in February, 1980; Devan Young, in February, 1979.

At a minimum, the two cases clearly involve similar issues with respect to Young's claim that Key had a duty to warn of the effects of a viral infection on the use of theophylline.

In addition, Key had originally offered Golub's testimony in the Hyde trial.

Under these circumstances, it is assumed that the party originally offering the witness's testimony had an adequate opportunity to develop the witness's testimony by direct and redirect examination and, if necessary, impeachment of the party's own witness.

(Footnote omitted.) 5B K. Tegland, Wash. Prac., *Evidence* § 395, at 251 (3d ed. 1989).

■ After reviewing the facts in relation to the criteria of ER 804(b)(1), Young has only complied with the requirements of the rule as to the former testimony of Golub. Given the nature of the lawsuit (product liability), Young's claims, and the position Golub formerly held at Key, Golub's testimony in the Hyde trial could have a significant impact on the resolution of one of the disputed issues in this case. The trial court thus clearly departed from the accepted and usual course of judicial proceedings in refusing to permit the use of Golub's testimony from the Hyde trial.

In light of our holding, we find it unnecessary to address the issue of whether the trial court erred in denying Young's motion to issue letters rogatory for the deposition of Golub in Florida. We therefore grant discretionary review of the June 27 ruling of the trial court as it pertains to Golub's former testimony, accelerate review, and reverse that pretrial ruling of the trial court. The case is remanded to the Superior Court for further proceedings consistent with this opinion.

Review denied at 118 Wn.2d 1023 (1992).