[No. 34173-1-I.   Division One.   May 6, 1996.]

JULIA A. VIERECK, Individually and as Personal
Representative, *Respondent*, v. FIBREBOARD
CORPORATION, ET AL., *Defendants*, OWENS-CORNING
FIBERGLAS CORPORATION, *Appellant.*

*Ronald C. Gardner, Steven G. Wraith, Philip B. Grennan*, and *Lee, Smart, Cook, Martin & Patterson, P.S., Inc.*, for appellant.

*William J. Rutzick* and *Schroeter, Goldmark & Bender, P.S.*, for respondent.

Cox, J. — Owens-Corning Fiberglas Corporation (OCF) appeals a judgment on a jury verdict in favor of Virgil O. Viereck and Julia Viereck, his wife. Viereck contracted mesothelioma, a cancer resulting from his exposure in the late 1950s to asbestos-containing insulation products OCF

manufactured. The trial court correctly applied to this case the products liability law in effect prior to enactment of the Washington products liability act of 1981 (WPLA). The court also acted within its discretion by excluding certain expert testimony and a hearsay declaration. We therefore affirm the judgment on the verdict.

Viereck worked as a laborer and operator at the Shell Oil Refinery in Anacortes from about 1956 to 1960. During that time, he was exposed to asbestos and asbestos-containing products manufactured by OCF. In 1992, he was diagnosed with mesothelioma, a malignancy in the lining of the lungs.

In February 1993, Viereck and his wife commenced this action against OCF and others. They sought damages based on products liability and negligence theories. A jury returned a verdict in their favor solely on the products liability claim. The trial court entered judgment on the jury verdict. OCF appeals.

During the appeal, Viereck died. His wife remains a party to the appeal, individually and as personal representative of his estate.

I

Applicable Products Liability Law

OCF contends that the trial court erred by not applying the WPLA to this case. According to OCF, the court's ruling precluded it from presenting certain state-of-the-art defenses available under the WPLA. Because the jury based its verdict solely on products liability, not negligence, OCF argues that the trial court's rejection of OCF's proposed jury instructions based on the WPLA was prejudicial.

There is no meaningful distinction between this case and two of our prior cases on this subject, both of which

upheld trial courts' decisions not to apply the WPLA.[1] We therefore hold that the WPLA does not apply to Viereck's claim.

## A

### Assignments of Error

Viereck raises two preliminary and related issues. He urges us not to consider portions of OCF's appeal. Viereck argues that OCF failed to properly identify in its briefing the specific errors it claims the trial court made. He also argues OCF failed to properly preserve below the claimed error. We disagree and reach the merits of the appeal.

■ RAP 10.3(a)(3) requires that an appellant state concisely each error that it claims the trial court made, along with the legal issue or issues pertaining to each alleged error. But RAP 1.2(a) calls for a liberal interpretation of the Rules of Appellate Procedure "to promote justice and facilitate the decision of cases on the merits. Cases and issues will not be determined on the basis of compliance or noncompliance with these rules except in compelling circumstances where justice demands . . . ." Accordingly, our Supreme Court recently held that "when an appellant fails to raise an issue in the assignments of error . . . and fails to present any argument on the issue or provide any legal citation, an appellate court will not consider the merits of that issue."[2] The court reasoned:

> In a case where the nature of the appeal is clear and the relevant issues are argued in the body of the brief and citations are supplied so that the court is not greatly inconvenienced and the respondent is not prejudiced, there is no compelling

---

[1]*Krivanek v. Fibreboard Corp.*, 72 Wn. App. 632, 865 P.2d 527 (1993), *review denied*, 124 Wn.2d 1005 (1994); *Koker v. Armstrong Cork, Inc.*, 60 Wn. App. 466, 804 P.2d 659, *review denied*, 117 Wn.2d 1006 (1991).

[2]*State v. Olson*, 126 Wn.2d 315, 321, 893 P.2d 629 (1995).

reason for the appellate court not to exercise its discretion to consider the merits of the case or issue.[3]

Viereck admits in her brief that she "can surmise that OCF believes that its proposed instructions 20, 25 and 26 should have been given." It is clear to us from our reading of OCF's opening brief and the record that OCF assigned error to the trial court's choice of law and identified in its brief the prejudice from that ruling, citing its proposed instructions. It is equally clear to us that Viereck understood and responded to the arguments OCF advanced on appeal. Finally, it is clear from our review of the record that OCF made known to the trial court the bases of its objections to the rulings it now challenges on appeal.

## B

### Applicable Law

■ The applicability of the WPLA to this case is a question of statutory construction, which we review de novo.[4] In 1981, the Legislature enacted the WPLA[5] as part of the tort reform act. In *Koker*, this court first considered whether the WPLA was applicable to a case where exposure to asbestos-containing materials preceded passage of the act but manifestation of the disease followed enactment. Our court construed the meaning of the term "arising" in the following section of the 1981 tort reform act defining the class of claims to which the act applied: "This amendatory act shall apply to all claims arising on or after July 26, 1981."[6] Our court focused on the change from "accruing" to "arising" between the original draft and eventual passage in the Legislature.[7] Looking to the plain meanings of " '[a]rising' " and " 'arising out of,' " the

---

[3]*Olson*, 126 Wn.2d at 323.

[4]*State v. Smith*, 80 Wn. App. 535, 539, 910 P.2d 508 (1996).

[5]RCW 7.72.

[6]RCW 4.22.920.

[7]*Koker*, 60 Wn. App. at 470.

court noted that the terms generally mean " 'originating from', 'having [their] origin in', 'growing out of', or 'flowing from.' "[8] Examining a prior products liability case to illustrate the difference between "arising" and "accruing," the court noted that the injury in that case had arisen prior to the WPLA when the plaintiff fell from a scaffolding but did not accrue for purposes of the statute of limitations until the plaintiff discovered all the elements of the cause of action.[9] The *Koker* court thus held that because substantially all the injury-producing events had occurred prior to 1981, the effective date of the WPLA, the act did not apply.[10]

In *Krivanek*, this court squarely addressed the issue of whether the WPLA applies to a claim for damages resulting from mesothelioma caused by asbestos exposure predating the act, when the diagnosis occurred after the enactment of the WPLA. In that case, the plaintiff sued OCF and others, alleging negligence and products liability for exposure to asbestos–containing products. Our court held that "[w]here the harm results from exposure, and it appears that substantially all of the injury-producing events occurred prior to the adoption of the 1981 act, the 1981 act does not apply."[11]

*Krivanek* is indistinguishable from the case now before us. Like Krivanek, Viereck was exposed to asbestos-containing products before 1981 and diagnosed with mesothelioma after that date. As Viereck points out, OCF does not dispute that the exposure in question occurred in the late 1950s or that the diagnosis occurred after 1981. It is also undisputed that OCF, as a party to *Krivanek*, knew of the case and its disposition. Nevertheless, OCF argues that because the mesothelioma manifested itself after

---

[8]*Koker*, 60 Wn. App. at 471 (citation omitted).

[9]*Koker*, 60 Wn. App. at 471 (citing *Martin v. Patent Scaffolding*, 37 Wn. App. 37, 42-43, 678 P.2d 362, *review denied*, 101 Wn.2d 1021 (1984)).

[10]60 Wn. App. at 472.

[11]*Krivanek*, 72 Wn. App. at 635.

1981, the WPLA must apply. The argument misconstrues both *Koker* and *Krivanek,* both of which hold that the applicable law is that which is in effect at the time of the event that causes the actual harm (in this case exposure to asbestos), not at the time the disease manifests itself or is diagnosed. Because substantially all the events producing the injury to Viereck occurred before 1981, the WPLA does not apply.

OCF argues that we should depart from our prior holdings in *Krivanek* and *Koker* on the basis of the recent Washington Supreme Court decision in *Kilpatrick v. Department of Labor & Indus.*[12] We decline that invitation.

*Kilpatrick* addressed calculating workers' compensation benefits for survivors of workers who died from diseases resulting from asbestos exposure. The court held that a survivor's benefits under the Industrial Insurance Act should be determined "as of the date of manifestation of the asbestos-related disease causing the death."[13] The *Kilpatrick* court cited its earlier decision in *Department of Labor & Indus. v. Landon,*[14] the origin of the date-of-manifestation rule on calculating benefits for occupational disease. The *Landon* court relied on the statutory policy statement that the workers' compensation statutes "shall be liberally construed for the purpose of reducing to a minimum the suffering and economic loss arising from injuries and/or death occurring in the course of employment."[15] Thus, the court reasoned, "the statutory policy of compensating disabled workers is better promoted by using [the benefits] schedules in effect on the date a disease manifests itself."[16] Because the date of exposure is likely to be remote from the onset of occupational disease, the

---

[12]125 Wn.2d 222, 883 P.2d 1370 (1994).

[13]*Kilpatrick,* 125 Wn.2d at 232.

[14]117 Wn.2d 122, 814 P.2d 626 (1991).

[15]RCW 51.12.010.

[16]*Landon,* 117 Wn.2d at 126.

schedule in effect on the date of last exposure is correspondingly likely to be out of date when the disease begins to manifest itself.[17]

The policy underlying the date-of-manifestation rule in the Industrial Insurance Act does not control the policy underlying the date of applicability of the WPLA. In the latter statute, the Legislature's substitution of the word *arising* for *accruing* demonstrates its intent that the WPLA apply only to claims where the harm producing the injury occurs after July 1981, the effective date of the act. Moreover, no state benefits schedule applies to products liability claims. Thus, there is no corresponding question of a schedule being out of date and therefore likely to under-compensate for an injury. *Kilpatrick* is inapposite.

The trial court did not err in applying the law in effect before enactment of the WPLA.

Viereck moved to strike certain portions of OCF's reply brief. Because we affirm the trial court's application of pre-WPLA law, the motion is moot. We decline to reach the issues the motion addresses.

## II

### Expert Testimony

OCF argues that the trial court erred by admitting the testimony of Dr. Jon Ransom and JoAnn Kerrick but excluding portions of Dr. Elliott Hinkes' testimony. OCF claims Dr. Hinkes would have rebutted the testimony of the other two witnesses on renal failure. OCF did not object to Dr. Ransom's testimony at trial and therefore failed to preserve for review any alleged error in admitting his testimony.[18] But OCF did object to Ms. Kerrick's testimony because she was unavailable for deposition until the trial had already begun.

---

[17]*Landon*, 117 Wn.2d at 126-27.

[18]RAP 2.5(a).

██ We review a trial court's decision to admit or exclude evidence for an abuse of discretion.[19] "A trial court abuses its discretion only when its decision is manifestly unreasonable or based on untenable grounds."[20] It is not an abuse of discretion for a trial court to admit testimony when the party seeking exclusion fails to demonstrate prejudice as a result of admission.[21]

Here, the trial court found that OCF had not made a sufficient showing of prejudice from admitting Kerrick's testimony regarding the cost of Viereck's future medical care. Viereck's counsel had apparently attempted unsuccessfully to schedule the deposition in a timely manner. OCF had had Viereck's medical records, the factual basis for Kerrick's testimony, for a long time prior to Kerrick's deposition. Thus, OCF was able to prepare a witness to express an opinion as to Viereck's future medical costs. Finally, the trial court stated that if OCF needed more time to prepare a rebuttal witness, it would attempt to accommodate that need. There was no abuse of discretion.

██ As to Dr. Hinkes, the trial court found that OCF's failure to disclose in advance his opinion testimony regarding the causes of Viereck's renal failure constituted a "willful violation," with "no reasonable excuse," of the court's oral order to give Viereck the basis of Hinkes' opinion testimony. CR 37 authorizes a court to impose sanctions for a failure to comply with discovery orders. This court has stated that a trial court "does not abuse its discretion by excluding testimony as a sanction when there is a showing of intentional or tactical nondisclosure,

[19]*Davis v. Globe Mach. Mfg. Co.*, 102 Wn.2d 68, 76, 684 P.2d 692 (1984).

[20]*Woodhead v. Discount Waterbeds, Inc.*, 78 Wn. App. 125, 131, 896 P.2d 66 (1995), *review denied*, 128 Wn.2d 1008 (1996).

[21]*Goodman v. Boeing Co.*, 75 Wn. App. 60, 84, 877 P.2d 703 (1994), *aff'd*, 127 Wn.2d 401, 899 P.2d 1265 (1995).

willful violation of a court order, or other unconscionable conduct."[22]

Here, the trial court found not only a willful violation of its oral order, but also that the nondisclosure appeared tactical and was prejudicial to Viereck. The colloquy with counsel prior to the ruling supports the trial court's finding. The trial court did not err by limiting Dr. Hinkes' testimony to the subjects on which he testified.

## III

## Hearsay Declaration

■ OCF argues that the trial court erred by admitting John Thomas' deposition without also admitting his subsequent declaration as to why he did not sign the deposition. We disagree.

When a declarant is unavailable for trial, his or her deposition is admissible under the former testimony exception to the hearsay rule.[23] As Professor Robert Aronson notes, "[t]his exception is probably the most reliable of the hearsay exceptions, because it requires the declarant to have testified under oath and subject to cross-examination by the party against whom the statement is offered at trial."[24] CR 30(e) provides that a witness shall be provided a copy of the transcribed deposition testimony and given an opportunity to correct and sign it within 30 days of the deposition, stating reasons why the corrections are necessary. The rule also provides that if a witness refuses to sign, an officer authorized to administer oaths shall sign it on the witness' behalf and state the reasons why the witness refused to sign.

Here, Viereck examined Thomas at his deposition on

---

[22]*Allied Financial Servs. v. Mangum*, 72 Wn. App. 164, 168, 864 P.2d 1, 871 P.2d 1075 (1993).

[23]ER 804(b)(1); *Young v. Key Pharmaceuticals, Inc.*, 63 Wn. App. 427, 431, 819 P.2d 814 (1991), *review denied*, 118 Wn.2d 1023 (1992).

[24]ROBERT H. ARONSON, THE LAW OF EVIDENCE IN WASHINGTON 804-22 (2d ed. 1993).

April 3, 1991. On May 7, 1991, Thomas submitted a declaration regarding his reasons for not signing the deposition. As the trial court correctly observed, the declaration is an out-of-court statement offered for the truth of the matter asserted. It is hearsay[25] and inadmissible, absent a codified exception.[26] No such exception applies to Thomas' hearsay declaration. The trial court did not abuse its discretion by ruling it inadmissible.

OCF contends that the declaration was admissible under CR 30(e) and ER 106 but did not make those arguments at trial. We will not consider them on appeal.[27]

We affirm the judgment on the verdict.

KENNEDY, A.C.J., and COLEMAN, J., concur.

Review denied at 130 Wn.2d 1009 (1996).