IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Estate of KAREN L. HURTEAU, | ) ) ) | No. 80556-8-I |
| Deceased. | ) ) | |
| DANA FLOTH and MICHELLE HURTEAU, | ) ) ) ) | |
| Respondents, | ) ) | UNPUBLISHED OPINION |
| v. | ) ) | |
| BRANDON DONALY, | ) ) ) | |
| Appellant. | ) | |
| In the Matter of the GARY L. and KAREN L. HURTEAU TRUST, dated March 10, 1999. | ) ) ) ) | No. 81415-0-I |
| BRANDON DONALY, | ) ) | |
| Appellant, | ) ) | UNPUBLISHED OPINION |
| v. | ) ) ) | |
| DANA FLOTH, Trustee of the Gary L. and Karen L. Hurteau Trust, | ) ) ) | |
| Respondent. | ) | |

Bowman, J. — Karen Hurteau died in a house fire, leaving a sizeable estate. Her daughters Michelle Hurteau and Dana Floth petitioned under the Trust and Estate Dispute Resolution Act (TEDRA), chapter 11.96A RCW, alleging Dana's son Brandon Donaly unduly influenced their mother to name him

as the sole beneficiary on two retirement accounts. Brandon then separately filed a petition under TEDRA to remove his mother as trustee of the Gary L. and Karen L. Hurteau Trust (Hurteau Trust), alleging she refused to distribute funds to him. The trust counterclaimed, seeking to disinherit Brandon for violating the Hurteau Trust's no contest clause. The trial court concluded that Brandon did not unduly influence his grandmother but that he acted in bad faith and contrary to the trust's no contest clause in seeking to remove Dana as trustee. We affirm.

FACTS

Karen and Gary[1] established the Hurteau Trust (Trust) in 1999 and served together as trustees during their lifetimes. Gary died in 2012 and Karen became the sole trustee. Karen died on June 11, 2018 in a house fire at the age of 77. She was survived by her daughters Michelle and Dana as well as Dana's son Brandon. At the time of Karen's death, the Trust was valued at about $3.2 million. Dana, Michelle, and Brandon were the beneficiaries of the Trust. Separate from the Trust, Karen had two IRAs[2] that also designated Dana, Michelle, and Brandon as the beneficiaries.

After Karen's death, Dana became the sole trustee of the Trust. The Trust provided that the trustee must retain its assets until the estate taxes and other liabilities were determined and paid. It called for a one-year administration period, during which the trustee had the "sole and absolute discretion" to make

---

[1] We refer to Karen Hurteau, Gary Hurteau, Michelle Hurteau, Dana Floth, and Brandon Donaly by their first names for purposes of clarity and mean no disrespect by doing so.

[2] Individual retirement accounts.

distributions to beneficiaries.[3]  The Trust authorized the trustee to serve, regardless of any conflicts of interest with beneficiaries.  And the Trust included a strict "no contest clause":

> If any of Trustors' statutory heirs, and beneficiary mentioned or referred to in this Trust or for whom or for whose benefit Trustors, or either of them, have made any provisions in this Trust, or any other person shall in any manner contest in any court or before any tribunal, this Trust or the validity thereof, or its due and proper execution, or the provisions applicable to him or her, or any other provision of this Trust, or shall in any way question Trustor's acts in making this Trust or any of its provisions, or file any claim against this Trust exceeding One Hundred Dollars ($100.00) then, in that event, such beneficiary or heir shall forfeit and cease to have any right, title or interest in or any portion of the Trust Estate or any property given under this Trust or any income from such property, and any and all provisions of this Trust in favor of or for the benefit of such beneficiary or heir are revoked.

At the time of Karen's death, Brandon was one month shy of his 23rd birthday.  Before he turned 35, a "sub-trust" held and administered Brandon's share of the Trust.  The Trust provision specified that the trustee

> shall use so much of the income or principal from the beneficiary's share as Trustee deems necessary for the beneficiary's maintenance, education, support and health to the age of [25] considering the availability to the beneficiary of other sources of funds.

At age 25, Brandon would receive "one-third of the net value of the then remainder of his . . . share."  Then at 30 years old, Brandon would receive one-half of the net value of his share of the Trust.  Finally, at age 35, he would receive the rest of his share.

---

[3] Such distributions would "be a charge against the share of the recipient who received the disbursement."

3

Brandon was not employed. He had been financially dependent on his grandmother since 2014. Karen paid Brandon's rent and utilities and gave him cars and money. In exchange, Brandon was to help Karen weekly with groceries, mail, bills, and housekeeping. In the last 37 months of her life, Karen made $59,800 in check and cash transfers to Brandon.

Dana knew that Brandon was financially dependent on Karen. So within a week of Karen's death, Dana in her capacity as trustee requested Brandon's lease and financial information so that she could try to disburse money from the Trust for his living expenses. Despite many requests, Brandon did not send Dana any documents showing his need. Even so, to ensure that Brandon had rent money, Dana wrote him a $2,000 check from her personal account as a "[T]rust advance."

After Karen's death, Dana and Michelle learned that Karen changed the beneficiary designations of both IRAs in the last year of her life. Karen named Brandon the sole beneficiary. Knowing that their mother had been an infirm and mostly homebound alcoholic in the year before her death, Dana and Michelle were concerned that Brandon unduly influenced Karen to change the beneficiary designations on the accounts.[4] Dana and Michelle filed a TEDRA petition contesting the beneficiary designations and alleging Brandon unduly influenced Karen over the disposition of the IRAs.

The court set a trial date in December 2018. The court later granted Dana and Michelle's motion to amend their complaint and continue the trial to April

---

[4] Even during times of sobriety, Karen's "ability to process facts or understand what was happening remained significantly diminished."

4

2019. Dana and Michelle's amended petition included a claim of financial abuse and exploitation of a vulnerable adult. Brandon did not file an amended answer to the complaint.

Instead, two months before trial, Brandon separately petitioned under TEDRA to remove Dana as trustee of the Trust. He alleged that Dana was "preventing the distribution of any funds from the [T]rust to [him] contrary to [its] language and intent." Brandon claimed that Dana was "taking advantage" of his financial need to "obtain leverage" in her litigation. Shortly after petitioning, Brandon's attorney Christopher Lee contacted the Trust's administrative attorney with an urgent request for a Trust disbursement because Brandon was facing eviction. After producing documents showing his need, Dana disbursed funds to Brandon from the Trust.

While Brandon's petition to remove Dana as trustee was pending, the parties engaged in settlement discussions. They reached a resolution but Brandon later changed his mind. Dana and Michelle moved to enforce the settlement agreement, which the trial court denied.

The Trust on behalf of Dana as trustee answered Brandon's petition to remove her and filed a counterclaim seeking to disinherit Brandon under the Trust's no contest clause. At the initial TEDRA hearing on Brandon's petition, the court found his claims "meritless" and unsupported by any facts. The court dismissed Brandon's petition with prejudice but allowed the Trust's counterclaim to proceed to trial. Brandon moved for reconsideration but later withdrew the motion. Brandon did not appeal the court's order dismissing his petition to remove Dana as trustee.

The trial court consolidated Dana and Michelle's TEDRA petition alleging undue influence and financial exploitation with the Trust's counterclaim to disinherit Brandon. The court set a trial date in May 2019.

The Trust's trial attorney considered calling Brandon's attorney Lee as a "fact witness" to Brandon's bad faith in seeking to remove Dana as trustee and asked to take his deposition. In response, Lee stated, "I am not a fact witness" and refused to sit for a deposition without a motion to compel his testimony. The Trust served Lee with a subpoena but then decided not to depose him pending its filing of a motion for summary judgment.

The Trust moved for summary judgment to enforce the no contest clause against Brandon. It argued that since Brandon did not appeal the trial court's dismissal of his TEDRA petition to remove the trustee, the court's legal determination that his petition was meritless and brought in bad faith was final. The Trust also argued Brandon brought his petition without disclosing to his attorney that the trustee had in fact disbursed funds to him. The trial court granted the motion in part, ruling Brandon "did not disclose a material fact to counsel before suing the Trustee and therefore is not entitled to a presumption [that he sought to remove Dana in] good faith." The trial court reserved for trial the issue of whether Brandon brought the petition in bad faith and continued the trial to July 2019.

Ten days before trial, Lee listed himself as a witness on the joint statement of evidence to testify "as to the facts and circumstances related to the counterclaim to enforce the no contest clause of the Hurteau Trust." The Trust's trial attorney then told Lee, "As you know, we identified you as a witness months

6

ago and attempted to take your deposition. You refused to appear for your deposition. Now that you have identified yourself as your own witness, we insist upon taking your deposition." Lee responded, "I don't anticipate testifying. I put myself down because you listed me." After this exchange, the Trust's attorney removed Lee from the joint statement of evidence.

The issue of Lee testifying arose again on the first day of trial. Lee suggested that the court could rule on whether Brandon violated the Trust's no contest clause without hearing testimony from witnesses. The trial court disagreed. Lee then asked that the court allow him to testify. The Trust objected because Lee refused to sit for a deposition, and allowing him to testify would prejudice the Trust. The trial court excluded Lee's testimony.[5]

After a five-day bench trial, the court entered extensive findings of fact and conclusions of law. It concluded that Dana and Michelle failed to prove that Brandon exploited or unduly influenced Karen to name him as the sole beneficiary of the IRAs.

The court also concluded that Brandon petitioned to remove Dana as trustee in bad faith and without probable cause. The court called Brandon's actions against the trustee "essentially a fraud" because he filed the lawsuit as an "attack" on the petition filed by Dana and Michelle. The court concluded that the meritless suit, brought in bad faith and without probable cause, triggered the no contest clause of the Trust. As a result, the court ordered, "Brandon has forfeited and shall cease to have any right, title, or interest in or to any portion of the Trust,

---

[5] Brandon moved to reconsider excluding Lee's testimony, which the court denied. Brandon appealed this order.

7

and all provisions of the Trust in favor of Brandon or for Brandon's benefit are hereby revoked."

Brandon moved for a new trial and sanctions based on discovery violations. He claimed that he could not prepare for trial because of "false witness designations" and "the unnecessary assertion of [attorney-client] privileges." Brandon also claimed that disinheriting him did not fulfill the intent of trustors Gary and Karen. The trial court denied Brandon's motion for a new trial.

Brandon then moved to reconsider the trial court's order enforcing the Trust's no contest clause. He argued that substantial evidence did not support the court finding he acted in bad faith in petitioning to remove Dana as trustee and claimed that Dana breached her fiduciary duty as trustee by bringing her counterclaim to enforce the no contest clause. The court denied the motion to reconsider. Brandon appealed.

Four months later, Brandon moved under CR 60(b) for relief from the court's order dismissing his petition to remove Dana as trustee.[6] Brandon claimed that new evidence revealed during trial demonstrated Dana was not an "appropriate" trustee for Brandon. Brandon also alleged fraud, misrepresentation, and misconduct that he claimed warranted relief.

The court held a hearing on the CR 60(b) motion and expressed serious disapproval of having to revisit the case a year later, stating, "It was meritless then, and it remains meritless now." The court found the motion "disingenuous, at best." The court pointed to the findings and conclusions entered after the five-

---

[6] Brandon filed the CR 60(b) motion to vacate on February 11, 2020, almost a year after entry of the order dismissing his petition on April 19, 2019.

8

day trial that "specifically address" Brandon's allegations. Declaring the motion a "complete waste of judicial resources," the trial court denied the motion to vacate and awarded the Trust attorney fees and costs. Brandon appeals this ruling as well.

Brandon moved to consolidate his appeals. We granted his motion in part. Because we consider Brandon's two appeals linked, we address them in a single opinion.

ANALYSIS

Brandon argues the trial court erred in concluding that his petition to remove Dana as trustee triggered the Trust's no contest clause. Specifically, Brandon alleges that the court improperly excluded his attorney's late-disclosed testimony and denied his motion to reconsider, erred in finding that Dana clearly told him how to access Trust distributions, and erred in concluding that he acted in bad faith and without probable cause. Brandon also challenges the court's order denying his motion to reconsider its order enforcing the no contest clause and his motion to vacate its order dismissing Brandon's petition to remove Dana as trustee. We address each assignment of error in turn.

Exclusion of Witness Testimony

Brandon contends the trial court erred by excluding his attorney Lee as a witness to his good faith in petitioning for Dana's removal as trustee. According to Brandon, the trial court abused its discretion because "Lee's refusal to have his deposition taken was not willful," it did not substantially prejudice the Trust's ability to prepare for trial, and a lesser sanction "would have sufficed." The Trust claims that the trial court properly applied Burnet v. Spokane Ambulance, 131

9

Wn.2d 484, 933 P.2d 1036 (1997), to exclude Lee's late-disclosed testimony. We agree with the Trust.

We review a trial court's decision to exclude evidence for an abuse of discretion. Viereck v. Fibreboard Corp., 81 Wn. App. 579, 587, 915 P.2d 581 (1996); see Burnet, 131 Wn.2d at 494. A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. Burnet, 131 Wn.2d at 494.

A trial court's discretion to exclude a witness is "cabined by . . . Burnet and its progeny." Jones v. City of Seattle, 179 Wn.2d 322, 338, 314 P.3d 380 (2013) (Burnet applies when imposing a severe sanction under CR 37(b),[7] such as witness exclusion). Under Burnet, the trial court must consider (1) whether the noncompliant party's conduct was willful or deliberate, (2) whether the conduct substantially prejudiced the opponent's ability to prepare for trial, and (3) whether a lesser sanction would suffice before imposing " 'one of the harsher remedies allowable under CR 37(b).' " Jones, 179 Wn.2d at 338[8] (quoting Burnet, 131 Wn.2d at 494). A party's failure to comply with a court order is willful if it occurs without reasonable justification. Jones, 179 Wn.2d at 345. But violation of a discovery order alone is not enough; "[s]omething more is needed." Jones, 179 Wn.2d at 345.

---

[7] CR 37(b) allows sanctions for failure to comply with a discovery order.

[8] Internal quotation marks omitted.

Here, the trial court considered the <u>Burnet</u> factors on the record before excluding Lee's late-disclosed testimony:

> Mr. Lee was offered the opportunity, if we can call it that, by way of a subpoena to sit for deposition and declined, listed himself as a witness but then clarified that he would not be a witness when the petitioner asked if he would be a witness, indicating they would need to depose him if he was going to be and so the petitioners were relying on that.
>
> So at this point, at the beginning of trial, the prejudice is simply too great to the petitioner and so lesser — there is no lesser sanction that would — I guess there's no lesser sanction that would suffice as far as I'm concerned other than excluding Mr. Lee's testimony . . . as a witness.

The record supports the trial court's decision. King County Superior Court Local Civil Rule (LCR) 4(k) requires parties to file a joint statement of evidence, including "a list of the witnesses whom each party expects to call at trial," at least five court days before the trial date. The trial court here specifically ordered the disclosure of witnesses and warned that failure to comply with LCR 4(k) "shall result in the exclusion of the witnesses' testimony at the time of trial, or such other sanctions as the Court deems appropriate." Despite Lee listing himself as a witness in the joint statement of evidence, he told the Trust that he would not testify as a fact witness twice—once when the Trust asked to depose him, and again after he disclosed himself as a fact witness in the joint statement of evidence.[9] Lee's repeated assurances that he would not testify, along with his refusal to be deposed, reasonably led the Trust to believe that he would not be a witness. His change of strategy the first day of trial amounts to a willful and deliberate violation of the discovery rules without reasonable justification.

---

[9] Lee stated he did not anticipate testifying the second time on July 8, 2019. Trial began July 17, 2019.

Lee's conduct also prejudiced the Trust's ability to prepare for trial. Relying on Lee's representations, the Trust chose not to compel a deposition after he refused. The Trust renewed its request to depose Lee after he listed himself in the joint statement of evidence. But again, Lee assured the Trust that he would not testify. As a result, the Trust did not depose Lee and was unprepared for Lee's testimony at trial.

Even so, Brandon argues that the court could have ordered Lee to sit for a deposition before his testimony, and that it "would have been an appropriate [lesser] sanction to make Brandon responsible for the fees and costs" incurred. But Brandon ignores the potential ethical issues inherent in a trial attorney testifying as a fact witness for his client. See RPC 3.7(a). Lee's testimony would have delayed trial indefinitely not only to depose him, but then to resolve the accompanying ethical issues, including Lee's potential disqualification as Brandon's attorney. The court did not abuse its discretion in excluding Lee's testimony.[10]

Finding of Fact on Documenting Need for Trust Distributions

Brandon argues, "There is insufficient evidence to support a finding that [he] was informed by Dana that he needed to provide certain documents in order to obtain a distribution" from the Trust. We review a trial court's findings of fact for substantial evidence. In re Estate of Jones, 152 Wn.2d 1, 8, 93 P.3d 147 (2004). Substantial evidence is "evidence that is sufficient to persuade a rational, fair-minded person of the truth of the finding." Jones, 152 Wn.2d at 8.

---

[10] We also conclude the court did not abuse its discretion in denying Brandon's motion to reconsider its order excluding Lee's testimony. O'Neill v. City of Shoreline, 183 Wn. App. 15, 21, 332 P.3d 1099 (2014).

First, Brandon misstates the trial court's finding of fact. The finding states, "After Karen's death, Dana as Trustee asked Brandon what he needed for his maintenance and support and asked him to document those needs. Brandon did not respond to Dana's requests." In any event, testimony from both Dana and Brandon as well as text messages between the two support the finding that Dana asked Brandon to document his needs.

Brandon testified that Dana asked him for copies of financial documents in support of his request for a Trust distribution, but he did not provide them:

> Q. When you told your mother shortly after your grandmother's death that you needed money to pay your rent, did she ask you for a copy of your lease, a budget, proof of your expenses?
> A. She asked me for my lease and a few other documents. I can't remember exactly what.
> Q. Did you give her those documents?
> A. No.[11]

Dana gave similar testimony:

> I told [Brandon] when I talked to him [six days after Karen's death] that if I were to give him any distributions, he had to demonstrate need. So I asked him to send me a copy of his lease . . . .
> I needed a copy of his bank statements because I needed to determine his availability to other funds. I didn't know if he had money in savings or what have you, and then a copy of his, you know, budget or expenses because I didn't know if he had credit cards or cell[ ]phones or cable or any of that.

Dana followed up the request for documents with text messages asking, "Are you going to send me your info[rmation] that we talked about," "Are you going to send me you[r] documents so we can figure out a plan," and, "What about the lease and other paperwork we discussed." In response to one of

---

[11] Boldface omitted.

13

Dana's text messages asking, "Are you going to send me your stuff," Brandon responded, "No, not now." Brandon often responded to Dana's requests that he was too "busy" at the moment or did not respond at all.

The record shows Dana made several attempts to get Brandon's financial documents to support his requests so that she could properly disburse funds from the Trust. The record also shows that Brandon was aware of her requests and chose not to comply. Substantial evidence supports the trial court's finding that Dana asked Brandon to provide documentation to show his financial needs in order to obtain a distribution from the Trust.

Conclusion of Law on Bad Faith

Brandon contends the trial court erred when it concluded that he "filed his TEDRA petition [to remove Dana as trustee] . . . in bad faith and without probable cause." We disagree.

After a bench trial, our review is limited to whether substantial evidence supports a trial court's findings of fact and whether those findings support the conclusions of law. Endicott v. Saul, 142 Wn. App. 899, 909, 176 P.3d 560 (2008). "Substantial evidence is the quantum of evidence sufficient to persuade a rational fair-minded person the premise is true." Endicott, 142 Wn. App. at 909. In evaluating the sufficiency of the evidence, we consider only the evidence favorable to the prevailing party. Endicott, 142 Wn. App. at 909. We also view all reasonable inferences in the light most favorable to the prevailing party. Jensen v. Lake Jane Estates, 165 Wn. App. 100, 104, 267 P.3d 435 (2011). While the trier of fact is free to believe or disbelieve any evidence presented at trial, "[a]ppellate courts do not hear or weigh evidence, find facts, or substitute

14

their opinions for those of the trier-of-fact." <u>Quinn v. Cherry Lane Auto Plaza, Inc.</u>, 153 Wn. App. 710, 717, 225 P.3d 266 (2009).  Unchallenged findings are verities on appeal.  <u>Endicott</u>, 142 Wn. App. at 909.  We review questions of law de novo.  <u>Endicott</u>, 142 Wn. App. at 909.

Generally, a no contest clause is valid and enforceable.  <u>See</u> <u>In re Estate of Mumby</u>, 97 Wn. App. 385, 393, 982 P.2d 1219 (1999).  But a no contest clause will not operate when a beneficiary contests in good faith and with probable cause.  <u>Mumby</u>, 97 Wn. App. at 393.  "If a contestant initiates an action on the advice of counsel, after fully and fairly disclosing all material facts, [he] will be deemed to have acted in good faith and for probable cause as a matter of law."  <u>Mumby</u>, 97 Wn. App. at 393.  But when a contestant fails to disclose all material facts to his attorney fully and fairly, the contestant is not entitled to a presumption of good faith.  <u>Mumby</u>, 97 Wn. App. at 394.

When, as here, the presumption of good faith does not apply,[12] the trier of fact will determine whether the contestant acted "in bad faith and without probable cause."  <u>Mumby</u>, 97 Wn. App. at 394.  A party can show bad faith by actual or constructive fraud; neglect or refusal to fulfill a duty; or "an act 'not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive.' "  <u>In re Estate of Gillespie</u>, 12 Wn. App. 2d 154, 173, 456 P.3d 1210 (2020) (quoting <u>Mumby</u>, 97 Wn. App. at 394).

---

[12] On summary judgment, the trial court concluded that Brandon was not entitled to the presumption of good faith because he failed to disclose the material fact to his attorney that Dana disbursed funds to him.  Brandon did not appeal this decision.  The outstanding issues for trial were whether Brandon acted in bad faith and without probable cause, invoking the no contest clause.

Brandon argues the trial court's conclusion that his lawsuit "was essentially a fraud" and that he brought it in bad faith to "attack the [TEDRA action] filed by Dana and Michelle" is not supported by the findings of fact. He complains that the court "does not explain" how his "extensive arguments" about Dana and Michelle in his petition to remove Dana as trustee and the timing of his petition amount to bad faith. But the court explained in its written findings and conclusions that Brandon's extensive arguments about "beneficiary designations and financial exploitation" in his petition to remove Dana as trustee "show that Brandon's petition was really meant as an attack on the allegations against Brandon" in Dana and Michelle's separate lawsuit. The court also explained, "The fact that Brandon filed his petition . . . before answering the amended allegations relating to financial exploitation" in Dana and Michelle's lawsuit and noted it for hearing "just three days before trial was to begin" suggests that Brandon "brought [his petition] in bad faith to derail the suit" brought by Dana and Michelle.

And Brandon ignores the trial court's finding that he petitioned to remove Dana as trustee for failure to disburse funds even though

> Brandon had not been denied anything that he was otherwise entitled to from the Trust. To the contrary, when Dana as Trustee asked Brandon to specify his needs to enable Dana to exercise her discretion to make distributions to Brandon to help provide for his needs, Brandon did not respond.

Viewed in the light most favorable to the Trust, the trial court's findings support its conclusion that Brandon petitioned for Dana's removal as trustee in bad faith and without probable cause.

16

Motion for Reconsideration

Brandon argues the trial court erred in denying his motion to reconsider its order enforcing the no contest clause. According to Brandon:

> It is not substantial justice that Gary and Karen's only grandchild and last descendent is disinherited from the Hurteau Trust when he had a close, affectionate relationship with his grandmother and spent much time with her during the last years of her life, unlike her daughters.

We review a trial court's denial of a motion to reconsider for an abuse of discretion. O'Neill, 183 Wn. App. at 21. When interpreting a trust, our duty is to give effect to the trustor's intent. In re Guardianship of Jensen, 187 Wn. App. 325, 331, 350 P.3d 654 (2015). If possible, we ascertain that intent from the unambiguous language of the trust. Jensen, 187 Wn. App. at 331.

Here, the Trust's no contest clause is unambiguous. The clause calls for disinheritance of any beneficiary that contests "this Trust or the validity thereof, or its due and proper execution, or the provisions applicable to him or her, or any other provision of this Trust, or shall in any way question Trustor's acts in making this Trust or any of its provisions." Substantial evidence supports the court's conclusion that Brandon petitioned for removal of the trustee in bad faith and without probable cause. Enforcing the strict no contest clause aligns with the terms of the Trust and intent of the trustors. The trial court did not abuse its discretion in denying Brandon's motion for reconsideration.[13]

---

[13] Below, Brandon filed a motion for a new trial based on discovery violations, which the court denied. Brandon now appeals the order, arguing for the first time that he is entitled to a new trial because Dana committed misconduct by acting in her own self-interest rather than as trustee in pursuing her counterclaim to disinherit him. He also argues for the first time that the trial court failed to consider Dana's duty to act in the interests of the beneficiaries during litigation. Because Brandon did not raise these issues below, we decline to review them. RAP 2.5(a).

Motion To Vacate

Brandon claims the court abused its discretion in denying his CR 60(b) motion to vacate its order dismissing his petition to remove Dana as trustee. We disagree.

"On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order, or proceeding" for many reasons, including newly discovered evidence, fraud, misrepresentation, or misconduct. CR 60(b)(3), (4). We review a trial court's decision on a CR 60(b) motion for abuse of discretion. Union Bank, NA v. Vanderhoek Assocs. LLC, 191 Wn. App. 836, 842, 365 P.3d 223 (2015).

New Evidence

Brandon cites newly discovered evidence as a ground for his motion to vacate the order dismissing his petition to remove the trustee. A party may move to vacate for "[n]ewly discovered evidence which by due diligence could not have been discovered in time to move for a new trial." CR 60(b)(3). To successfully vacate a judgment for newly discovered evidence, the moving party must show that the evidence (1) would probably change the result if the court granted a new trial, (2) was discovered since trial, (3) could not have been discovered before trial by the exercise of due diligence, (4) is material, and (5) is not merely cumulative or impeaching. Jones, 179 Wn.2d at 360.

According to Brandon, he "presented new evidence from the trial that his mother did in fact have significant negative attitudes and opinions" of him. He also claims that evidence produced at trial shows Dana instructed the Trust attorney "not to send a written communication to Brandon regarding how to

18

obtain distributions from the [T]rust." But Brandon fails to show that Dana's animosity toward him would have changed the result of the court's order dismissing the petition to remove Dana as trustee. The Trust specifically exempts disqualification of a trustee who has a personal conflict with a beneficiary:

> A Trustee shall not be barred or disqualified from acting in a fiduciary capacity other than and in addition to Trustee of this Trust in matters and decisions hereunder, regardless of whether his or her interest conflicts with those of any beneficiary.

Moreover, Dana's instructions to the Trust attorney are of little value because the evidence shows Dana disbursed Trust assets to Brandon when he provided the documents supporting his need.

<u>Fraud, Misrepresentation, and Misconduct</u>

Brandon also moved to vacate under CR 60(b)(4), which allows for relief from judgment because of "[f]raud (whether . . . intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." Under this subsection, "the fraudulent conduct or misrepresentation must <u>cause</u> the entry of the judgment such that the losing party was prevented from fully and fairly presenting its case or defense." <u>Lindgren v. Lindgren</u>, 58 Wn. App. 588, 596, 794 P.2d 526 (1990). The party attacking the judgment must establish the misconduct by clear and convincing evidence. <u>Lindgren</u>, 58 Wn. App. at 596.

Brandon claims that "Dana misled [him] regarding her position as trustee as to whether distributions could be allowed," and that "[s]uch misrepresentation went directly to the substance of [his] claim." Brandon asserts Dana "admitted to knowing that representations were made to the court in pleadings in November

19

2019 that Brandon should not receive distributions, and that no distributions had been made." Brandon's argument again ignores the evidence that he knew he needed to document his needs before Dana could disburse Trust funds to him and that he refused to do so. In any event, the record shows Dana disbursed personal funds in response to Brandon's request as a "[T]rust advance." Brandon also received Trust disbursements after he produced eviction documentation. The trial court did not abuse its discretion in denying Brandon's motion to vacate under CR 60(b)(3) and (4).

Attorney Fees and Costs

TEDRA gives courts the discretion to award reasonable attorney fees and costs

> a) [f]rom any party to the proceedings; (b) from the assets of the estate or trust involved in the proceedings; or (c) from any nonprobate asset that is the subject of the proceedings. The court may order the costs, including reasonable attorneys' fees, to be paid in such amount and in such manner as the court determines to be equitable. In exercising its discretion under this section, the court may consider any and all factors that it deems to be relevant and appropriate, which factors may but need not include whether the litigation benefits the estate or trust involved.

RCW 11.96A.150(1). Under this statute, courts have considerable discretion over whether to award fees. In re Estate of Hook, 193 Wn. App. 862, 873-74, 374 P.3d 215 (2016). We review an award of attorney fees for an abuse of discretion. In re Estate of Evans, 181 Wn. App. 436, 451, 326 P.3d 755 (2014).

Trial

Brandon contends the trial court's denial of his motion for attorney fees and costs following trial was "unreasonable" because RCW 11.96A.150 awards fees based on equity rather than solely to the prevailing party. We disagree.

20

After trial, the court denied fees to both parties, concluding that "it would be inequitable to award Petitioners or Respondents their fees and costs." In reaching this conclusion, the court considered that Dana and Michelle based their claims on "little more than speculation" and that Brandon brought his suit in bad faith. The trial court weighed the evidence and conduct of the parties and made a reasoned decision. There was no abuse of discretion.

CR 60(b) Motion

The court awarded attorney fees and costs to the Trust in its order denying Brandon's CR 60(b) motion to vacate. Brandon argues the trial court "[a]cted [i]nequitably" by awarding attorney fees and costs against him after his motion failed. According to Brandon, "[t]here was substantial evidence supporting [his] decision to file a CR 60(b) motion." We disagree.

Brandon brought his motion to vacate 10 months after entry of the order dismissing his petition to remove Dana as trustee. His motion was also 7 months after the 5-day bench trial, in which the court entered findings and conclusions finding Brandon's petition meritless. Substantial evidence supports the trial court's finding that the motion was "meritless and frivolous." The trial court did not abuse its discretion in ordering Brandon to pay the Trust's attorney fees and costs for defending against the motion to vacate.

Appeal

Brandon and the Trust both request attorney fees and costs on appeal under RCW 11.96A.150. Appellate courts also have broad, equitable discretion to award fees under TEDRA. RCW 11.96A.150(1). Brandon bases his appeal mostly on his perceived unfairness of his disinheritance. The issues he raises

verge on frivolous. We therefore deny his request. We exercise our discretion to award appellate fees and costs to the Trust subject to compliance with RAP 18.1.

In sum, the trial court did not err in concluding that Brandon's petition to remove Dana as trustee triggered the Trust's no contest clause disinheriting him as a beneficiary. Substantial evidence supports the court's findings and conclusions that Brandon brought his petition in bad faith and without probable cause. Nor did the court abuse its discretion in excluding Lee's testimony, denying Brandon's motion to reconsider its order enforcing the no contest clause, and denying his CR 60(b) motion to vacate. Finally, the court did not abuse its discretion in denying Brandon's request for attorney fees and costs after trial and awarding attorney fees and costs to the Trust for defending against Brandon's frivolous CR 60(b) motion. The Trust is entitled to attorney fees and costs on appeal.

Affirmed.

_____
Bowman, J.

WE CONCUR:

_____     _____
Andrus, A.C.J.                       Dwyer, J.

22